THE STATE OF OHIO, APPELLEE, *v.* YOUNG, APPELLANT.

(No. 47906—Decided October 15, 1984.)

*John T. Corrigan,* prosecuting attorney, and *Jerome E. Dowling,* for appellee.

*Robert J. Lewis* and *Jeffry F. Kelleher,* for appellant.

CORRIGAN, C.J. Appellant James Young was indicted on June 17, 1980 on counts of aggravated murder, attempted murder, and aggravated robbery. He was tried in January 1981 and was convicted on all counts. For reasons unrelated to the instant appeal, this court reversed appellant's conviction, see *State* v. *Young* (Feb. 11, 1982), Cuyahoga App. Nos. 43439 and 43465, and this court's decision was affirmed by the Ohio Supreme Court on July 6, 1983, see *State* v. *Young* (1983), 5 Ohio St. 3d 221. The case was then remanded to the trial court for a new trial.

The second trial began on November 9, 1983. During its course, the prosecution sought to introduce into evidence the testimony of two witnesses from the first trial. Those witnesses, Dr. Anthony Nahkle and Barry Wallace, testified in a very damaging fashion to the appellant's case. At the second trial, the prosecution argued that Nahkle and Wallace were unavailable to testify. Wallace, who now lives in Georgia, was at first willing to come to Cleveland to testify; but, at the last minute, he refused to appear. Nahkle, who still lives in the Cleveland area, testified that he could no longer remember the events in question. The court thus declared each witness unavailable and allowed his testimony from the first trial to be introduced into evidence. Appellant was subsequently convicted on the counts of aggravated murder and aggravated robbery and on the lesser included offense of felonious assault. He is now before this court assigning the following two errors:

"I. It was error for the trial court to permit the introduction of the former testimony of witness Barry Wallace.

"II. It was error for the trial court to permit the introduction of the former testimony of witness Anthony Nahkle."

I

Appellant's initial contention is that the trial court erred by allowing Wallace's previous testimony to be admitted into evidence. In *Ohio* v. *Roberts* (1980), 448 U.S. 56, the United States Supreme Court established a two-pronged test to be used when determining whether former testimony of a witness should be admitted into evidence. First, it must be established that the witness is unavailable. Second, the witness' former testimony must bear adequate "indicia of reliability." In this case, the appellant is not challenging the reliability of Wallace's previous testimony; his challenge goes to the issue of Wallace's unavailability.

In *Ohio* v. *Roberts, supra,* at 74-75, the Supreme Court stated:

"The basic litmus of Sixth Amendment unavailability is established: '[A] witness is not "unavailable" for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial.' *Barber* v. *Page,* 390 U.S., at 724-725 (emphasis added). Accord, *Mancusi* v. *Stubbs, supra; California* v. *Green,* 399 U.S., at 161-162, 165, 167, n. 16; *Berger* v. *California,* 393 U.S. 314 (1969).

"Although it might be said that the Court's prior cases provide no further refinement of this statement of the rule, certain general propositions safely emerge. The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), 'good faith' demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. 'The

lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.' *California* v. *Green,* 399 U.S., at 189, n. 22 (concurring opinion, citing *Barber* v. *Page, supra*). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate."

Appellant maintains that Wallace was available to testify and that the prosecution did not make a good faith effort to "obtain Wallace's presence at trial."

Wallace's location was discovered by the prosecution, and he was subpoenaed to appear at appellant's second trial. He was provided with a plane ticket and was told that his lodging and all other needs would be taken care of. Wallace was scheduled to arrive in Cleveland during the evening of November 13, 1983. At no time prior to that date did he express any unwillingness to testify or seem uncooperative. However, when a detective from the Cleveland Police Department went to meet Wallace at the airport, Wallace was not on his flight. The next day, Wallace was contacted in Georgia and stated that he changed his mind and no longer intended to come to Cleveland. The assistant prosecutor informed Wallace, as did the court's bailiff, that he was under subpoena and under a legal duty to come to Cleveland to appear in court.

Appellant maintains that despite these efforts, the prosecution failed to demonstrate good faith. Appellant contends that the prosecution should have availed itself of the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State ("the Act") which would have allowed it to compel Wallace to come to Cleveland. While utilization of the Act, which is codified in R.C. 2939.25 to 2939.29 and Ga. Code Ann. Sections 38-2001a to 38-2008a, was available to the prosecution, we do not agree with appellant that, in this case, good faith required its use.

Until November 13, 1983, the prosecution believed that Wallace would willingly come to Cleveland to testify. Wallace himself acted in a cooperative fashion and gave no indication that he had decided not to appear in court. It was only when Wallace did not get off the flight from Atlanta, Georgia, that the prosecution realized that he had decided not to come to Cleveland.

The Act sets forth a procedure by which a party can attempt to secure the attendance of an out-of-state witness. The court in which the witness has been subpoenaed to appear must send a certificate to the court in the county in the state in which the witness resides stating that the witness is material and necessary to the first court's action. The court in the witness' home county must then conduct a hearing at which the party seeking the attendance of the witness bears the burden of proving that the witness is material and necessary to the case. It is only after the court in the witness' home county determines that the witness is material and necessary that measures will be taken to insure the witness' appearance in court in the first state. Thus, the result of utilizing the procedure in the Act is not automatic.

In the instant case, appellant's trial began on November 9, 1983. It was not known until November 13, four days after the start of the trial, that Wallace was not coming to Cleveland. In *Ohio* v. *Roberts,* the Supreme Court specifically stated that the prosecution must make a good faith effort, *prior to trial,* to locate and present a witness. Clearly, the action of the prosecution in this case demonstrated that it acted in good faith, prior to trial, in its attempt to insure that Wallace came to Cleveland to testify. In *State* v. *Keairns* (1984), 9 Ohio St. 3d 228, at paragraph two of the

syllabus, the Supreme Court held that Evid. R. 804(B)(1) "permits the admissibility at trial of former testimony taken at a previous trial upon a showing that the witness is unavailable despite reasonable efforts made in good faith to secure his presence at trial."

Appellant argues that the prosecution should have begun utilizing the procedure set forth in the Act as soon as his case was remanded for a new trial. We disagree. Wallace appeared quite willing to cooperate and gave no indication that he would not come to Cleveland. The Act is not something which must be used in every situation; it is a remedy which may be used when the situation calls for it. When a witness appears very willing to cooperate, it is not reasonable to expect the prosecution to expend the time and energy to set the wheels of the Act in motion.

We also believe that the trial court acted reasonably in not granting a continuance to secure Wallace's attendance once trial had begun. There was no way of knowing just how long the procedure in the Act would take to run its course. It may have only been a few days, or it may have been weeks. Further, although it was likely, there was no guarantee that the court in Wallace's home county would have ruled that he was necessary and material to the instant action. The Supreme Court has not held that good faith requires exhaustion of all available remedies. As held in *Ohio v. Roberts,* good faith *may* require exhaustion, but the crucial question is one of reasonableness depending on the circumstances. Under the facts in the case *sub judice,* the prosecution did act in good faith, and the court was correct in ruling Wallace to be unavailable. The first assignment of error is thus overruled.

II

Appellant's second contention is that the court erred in declaring An-thony Nahkle unavailable and introducing his former testimony into evidence. Unlike Wallace, Nahkle was present at the appellant's second trial. However, he testified that he could no longer remember the events which were the subject of his previous testimony. He also testified that he is suffering from a wide variety of physical and emotional problems, ranging from skull fractures to anemia. He is under psychiatric care and on medication. The gist of appellant's argument is that the court should not have believed Nahkle's claimed lack of memory in the absence of expert testimony.

Evid. R. 804(A)(3) states:

"(A) 'Unavailability as a witness' includes situations in which the declarant:
"* * *

"(3) testifies to a lack of memory of the subject matter of his statement; * * *"

Further, Evid. R. 804(B)(1) provides:

"(B) The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."

It is unnecessary for an expert to testify on behalf of a witness who claims loss of memory. A court can, in its discretion, admit the former testimony of a witness based on the witness' own present testimony regarding his or her loss of memory. See *McDonnell* v.

*United States* (C.A. 8, 1973), 472 F.2d 1153, 1155; *United States* v. *Amaya* (C.A. 5, 1976), 533 F.2d 188, 191. Even in situations where a witness is unresponsive and uncooperative on the stand, the court can admit into evidence the witness' former testimony. *California* v. *Green* (1970), 399 U.S. 149, 167-168.

Three and one-half years had elapsed between the events in question and appellant's second trial. Further, as evidence of Nahkle's problems mentioned above, he is no longer able to practice medicine. Clearly, the court did not abuse its discretion in admitting into evidence Nahkle's testimony from appellant's first trial. Appellant's second assignment of error is not well-taken.

For the reasons adduced herein, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PARRINO and NAHRA, JJ., concur.