865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald MRAMOR, Petitioner-Appellant,
v.
Norris W. McMACKIN, Supt., Respondent-Appellee.
 No. 88-3124.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1988.
 
 Before KENNEDY, RALPH B. GUY, Jr., and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, Gerald Mramor, an inmate at the Marion Correctional Institution in Ohio, appeals the district court's denial of his habeas corpus petition, filed pursuant to 28 U.S.C. Sec. 2254. Mramor contends that the state trial court's admission of the hearsay statement of Julius Bacsa at Mramor's murder trial violated his constitutional right to confront and cross examine witnesses against him.[1] He also claims that the district court erred (1) in ruling that Bacsa was unavailable and (2) in concluding that if admission of Bacsa's hearsay statement was improper, its admission constituted harmless error.
 
 
 2
 For the following reasons, we affirm the district court's denial of Mramor's habeas petition.
 
 
 3
 The facts underlying this case reveal that Mramor and his codefendant Prenc spent the night of September 11, 1979, at Mramor's bar. At noon the next day, they set out in a truck to locate someone who owed money to Mramor. After stopping and drinking at various other bars, Mramor and Prenc had a near automobile collision with James Evans, his wife, and their young son. After saying, "I'm gonna catch that son-of-a-bitch," Mramor turned his truck around, pursued Evans' vehicle, forced it to stop, alighted from his truck, hurried to Evans' vehicle, and shot Mr. Evans in the face, killing him. Mramor and Prenc fled to Bacsa's apartment and, after Prenc related what had transpired, the three set out to disable and abandon the truck and to report it stolen. Meanwhile, the police had been alerted to the shooting by an eyewitness and arrested Mramor when Bacsa drove him home. Mramor's handgun was found in Bacsa's car.
 
 
 4
 Bacsa, a Hungarian immigrant, was originally arrested in connection with Evans' homicide. On the evening of the shooting, Bacsa gave a signed statement to the police in which he recounted what Mramor and Prenc said and did after the shooting.[2] Bacsa's statement was, for the most part, consistent with the testimony of Prenc, the primary witness against Mramor.[3] Bacsa subsequently recanted his statement (App. at 80), contending that his lack of proficiency with the English language hindered his understanding of the events surrounding his questioning and statement.
 
 
 5
 Mrs. Evans was unable to identify Mramor hours after the shooting but recognized him in the court lobby at trial and subsequently identified him in court. Likewise, her son could not identify Mramor on the day of the shooting but did identify him as the perpetrator at trial. One of two patrons at a service station who observed the shooting also made an in-court identification of Mramor. Although Mramor did not testify, evidence of his alcoholism was admitted to negate his criminal intent. Because Bacsa was deemed unavailable to testify on the day of trial, a police officer read Bacsa's statement to the jury over objections by Mramor's counsel. A jury found Mramor guilty of murder and he was sentenced to fifteen years to life imprisonment. The allegedly improper admission of Bacsa's hearsay statement is the basis for Mramor's habeas corpus petition.
 
 
 6
 After exhausting his state remedies, Mramor sought a writ of habeas corpus in the United States District Court for the Northern District of Ohio alleging violations of his sixth and fourteenth amendment rights resulting from the admission of Bacsa's statement. Following an evidentiary hearing, the magistrate issued a report recommending dismissal of Mramor's petition. The district court adopted the magistrate's report and recommendation over Mramor's written objections. Mramor filed a notice of appeal and the district court granted an application for a certificate of probable cause enabling Mramor to pursue this appeal.
 
 I.
 
 7
 Although review of habeas corpus cases generally does not extend to state court rulings on the admissibility of evidence, review of such rulings is proper when an erroneous application of state law deprives a petitioner of constitutional rights. Fuson v. Jago, 773 F.2d 55, 59 (6th Cir.1985), cert. denied, 478 U.S. 1020 (1986). Mramor's petition implicates his constitutional right to confrontation of witnesses against him. Upon a full review of the record, we conclude that the state court's ruling admitting Bacsa's statement was not erroneous and did not deprive Mramor of a fundamental constitutional guarantee. Even if the ruling was erroneous, we further conclude the error was harmless.
 
 
 8
 Mramor claims that in admitting Bacsa's statement the district court failed to properly apply the relevant legal standard articulated in Lee v. Illinois, 476 U.S. 530 (1986). In Lee, the Supreme Court indicated that accomplices' confessions that incriminate defendants are presumptively unreliable. Id. at 543. The Court also acknowledged, however, that the presumption is rebuttable. Id. The Court referred to the principles of Ohio v. Roberts, 448 U.S. 56 (1980), which provide that an accomplice's hearsay statement is constitutionally admissible if the declarant is unavailable as a witness and the statement bears sufficient indicia of reliability. Id. at 65-66. In Roberts, the Court stated that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Id. at 66. If the hearsay evidence does not fall in a "firmly rooted hearsay exception," its presumptive unreliability still may be overcome if the statement is supported by particularized guarantees of trustworthiness. Id.
 
 
 9
 Applying the principles of Lee to Bacsa's statement, we first consider whether the district court's finding that Bacsa was unavailable at the time of Mramor's trial is clearly erroneous. The Ohio rules of evidence define unavailability in the context of hearsay exceptions as follows:
 
 
 10
 RULE 804. Hearsay Exceptions; Declarant Unavailable
 
 
 11
 (A) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:
 
 
 12
 (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or
 
 
 13
 (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or
 
 
 14
 (3) testifies to a lack of memory of the subject matter of his statement; or
 
 
 15
 (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
 
 
 16
 (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (B)(2), (3), or (4), his attendance or testimony) by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
 
 
 17
 We note that the Ohio state court of appeals affirmed the state trial court's finding that Bacsa was unavailable at the time of trial. (App. 34-35). The federal district court, pursuant to an evidentiary hearing conducted by the magistrate, also determined that Bacsa was unavailable at the time of trial. (App. 128-30). The courts determined that at the time of trial, unbeknown to the prosecution, Bacsa's attorney, or Cleveland detectives, Bacsa had moved to Louisiana. Bacsa's attorney previously had repeatedly assured the prosecution of Bacsa's presence and testimony at Mramor's forthcoming trial in exchange for the state's agreement not to prosecute Bacsa for his involvement in events following the shooting of Evans. When it became apparent that Bacsa was unable to be found, inquiries were made in his neighborhood, at the sheriff's office, post office, phone company, etc. Bacsa was located only after a warrant was issued for his arrest for obstruction of justice and Cleveland authorities were notified of his incarceration in Louisiana. The district court found it reasonable to rely on Bacsa's attorney's assurances of Bacsa's availability. Moreover, both the state and federal courts were satisfied that the prosecution's good faith, albeit unsuccessful, effort to obtain Bacsa's presence was sufficient to render Bacsa unavailable for purposes of Roberts. Good faith efforts to locate a witness do not require exhaustion of all possible remedies--the key question is the reasonableness of the prosecution's efforts. See State v. Young, 20 Ohio App.3d 269, 485 N.E.2d 814 (Ohio Ct.App.1984); see also California v. Green, 399 U.S. 149 (1970) (prosecution need only make reasonable efforts to produce a witness).
 
 
 18
 Although Bacsa testified that he informed Detective Cummings of his move, the detective's testimony refuted Bacsa's and was deemed more credible.[4] (App. 129). Under 28 U.S.C. Sec. 2254(d), we are bound by the state and federal district courts' determinations on this issue. Mramor has not shown the state and federal courts' determinations that Bacsa was unavailable to be clearly erroneous.
 
 II.
 
 19
 We now consider whether Bacsa's statement falls within a firmly rooted hearsay exception so as to confer upon it the requisite indicia of reliability necessary for its admission at trial.
 
 
 20
 The Supreme Court recently concluded that, in the context of the admissibility of the hearsay statement of a co-conspirator against a defendant, the Constitution does not require an inquiry into the independent indicia of reliability of the statement. Bourjaily v. United States, 107 S.Ct. 2775 (1987). The Court had previously concluded that, in the same context, an inquiry into unavailability was not constitutionally mandated. United States v. Inadi, 475 U.S. 387 (1986). In Bourjaily, the Court determined that "the co-conspirator exception is firmly rooted in our jurisprudence" such that Roberts requires no further independent inquiry into the reliability of such hearsay. 107 S.Ct. at 2783. Although the statement against interest exception has not been accorded the same status as the co-conspirator exception, at least four Supreme Court Justices recognized that the statement against interest exception is firmly established in our jurisprudence so as to validate the reliability of such statements. Lee, 476 U.S. at 547, 551-52 (Blackmun, J., dissenting, joined by Burger, C.J., Powell and Rehnquist, JJ.). Our disposition of this case does not require us to decide this question. Instead, we rely on the guidelines established by Roberts and discussed in Lee to reconcile hearsay exceptions with the confrontation clause.
 
 
 21
 In the present case, the prosecution sought to introduce Bacsa's out of court statement under rule 804(B)(3) of Ohio's rules of evidence ("rule 804(B)(3)"). That rule provides:
 
 
 22
 (B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 
 
 23
 .............................................................
 
 
 24
 ...................
 
 
 25
 * * *
 
 
 26
 (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 
 
 27
 In State v. Williams, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), the court recognized that this exception also encompasses statements against penal interest when the declarant is unavailable.
 
 
 28
 Thus, to admit Bacsa's statement under rule 804(B)(3) for the purpose of inculpating Mramor, requires a showing of corroborating circumstances indicative of the trustworthiness of Bacsa's statement. The rule contemplates a demonstration of corroborating circumstances concerning the statement's content and the conditions under which it was made, which, on balance, confer upon the statement clear indicia of reliability and trustworthiness. State v. Saunders, 23 Ohio App.3d 69, 491 N.E.2d 313 (Ohio Ct.App.1984).
 
 
 29
 Mramor relies on our decision in Fuson v. Jago, 773 F.2d 55 (6th Cir.1985), cert. denied, 478 U.S. 1020 (1986), as precedent barring admission of Bacsa's statement under rule 804(B)(3). In Fuson, the state sought to introduce an unavailable codefendant's statement against a petitioner under various hearsay exceptions, including rule 804(B)(3). In concluding that rule 804(B)(3) was an improper vehicle for admitting the codefendant's statement, we were influenced by a staff note to rule 804(B)(3) that provides: " '[A] statement (confession) admitting guilt and implicating another person in the same crime and made while in custody, might well be motivated by a desire to curry favor with the authorities and, hence, fail to qualify as being against interest.' " 773 F.2d at 60. In Fuson, the declarant's statement was not a spontaneous utterance. His confession was evoked by custodial interrogation without an oath or the support of a signed statement, and there was no subsequent confession by the petitioner to corroborate the declarant's statement. Thus, the statement lacked the corroboration necessary to render it sufficiently trustworthy for admission under rule 804(B)(3).
 
 
 30
 We are not persuaded that Fuson bars admission of Bacsa's statement under rule 804(B)(3). Although Bacsa was arrested in connection with Evans' shooting and made the statement while in custody in connection with Evans' murder, the notion that his statement was made to curry favor with authorities and lacked corroboration, which was determinative in Fuson, is not applicable here. Bacsa's signed statement was based on personal knowledge. It was made substantially contemporaneously with the criminal events in question while events were fresh in his mind. Moreover, the statement inculpated Bacsa, himself, for obstructing justice. Finally, Bacsa's statement was substantially corroborated by the testimony of Prenc at Mramor's trial. At that trial Prenc was present and subject to cross-examination by the defense. Although minor testimonial discrepancies exist,[5] both Prenc and Bacsa consistently related the arrival and condition of Prenc and Mramor at Bacsa's apartment subsequent to the shooting, the decision to report the truck as stolen in order to conceal Mramor's involvement in the shooting, the attempt to disable and abandon the truck to make it appear to have been stolen, and the return of Mramor to his home. Thus, as noted by the district court, Bacsa's statement sufficiently interlocked with Prenc's on material elements of the crime so as to overcome the presumption of unreliability.[6]
 
 
 31
 Thus, we are persuaded that Bacsa's statement is sufficiently corroborated to render it admissible as a statement against interest pursuant to 804(B)(3), if rule 804(B)(3) is recognized as a firmly rooted hearsay exception. We are inclined to hold that it is, but we need not bottom our holding on this conclusion alone because we are also persuaded that the same corroborating circumstances provide guarantees of the statement's trustworthiness and therefore satisfy the alternate requisite "indicia of reliability" contemplated by Roberts and Lee as a prerequisite for the statement's admission when it does not fall within a firmly rooted hearsay exception. Hence, we conclude that the admission of Bacsa's statement did not violate Mramor's constitutional right to confrontation.
 
 III.
 
 32
 Even if we had found that the state court erroneously admitted Bacsa's statement and that the admission violated Mramor's constitutional right to confrontation, we would, nevertheless, have found the error harmless.[7] Chapman v. California, 386 U.S. 18, 22 (1967) ("[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."). See also Mayes v. Sowders, 621 F.2d 850, 856 (6th Cir.), cert. denied, 449 U.S. 922 (1980).
 
 
 33
 For the foregoing reasons the denial of Mramor's habeas petition is AFFIRMED.
 
 
 34
 KENNEDY, Circuit Judge, concurring.
 
 
 35
 I concur in parts I and III of the Court's opinion. Since I agree that the admission of Bacsa's statement was harmless error, I would also affirm the conviction.
 
 
 
 [1]
 The sixth amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."
 
 
 [2]
 At the time of his statement Bacsa had been arrested in connection with Evans' murder. As such, even though he ultimately was not charged with this crime, his statement was treated as tantamount to that of a codefendant and not merely that of one with potentially useful information for the police. (App. at 130)
 
 
 [3]
 Prenc and Mramor were tried separately for Evans' murder
 
 
 [4]
 Mramor contends that Detective Cummings' testimony refuting Bacsa's testimony that Bacsa informed Cummings of his impending move is entitled to no weight because Cummings gave contradictory testimony at two different proceedings as to when he administered Miranda warnings to Bacsa. We are not persuaded by this argument. Notwithstanding the weight given to Cummings' testimony, the district court found Bacsa's testimony informing Cummings of his move to be inaccurate. (App. 128-30). Moreover, even if Cummings' testimony was disregarded, there remains ample evidence reflecting a good faith effort by the prosecution and Bacsa's attorney to locate Bacsa for trial
 
 
 [5]
 The inconsistencies did not pertain to material elements of the crime as in Lee, 476 U.S. at 546. Instead, they dealt with who drove whom, who reported the truck stolen, and who disabled the truck's ignition
 
 
 [6]
 Mramor contends that any interlock between Bacsa's statement and Prenc's testimony does not render Bacsa's statement constitutionally admissible. He relies on Cruz v. New York, 107 S.Ct. 1714 (1987), in which the Court held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, see Lee v. Illinois ..., the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." Id. at 1719. The Cruz Court also said, however, "Of course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the codefendant) despite the lack of opportunity for cross-examination ... and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless." Id. (citations omitted). Because we find Bacsa's statement directly admissible against Mramor, and that even if it were not admissible any error would be harmless error, Mramor's reliance on Cruz is unavailing
 
 
 [7]
 Although our focus is on the propriety of admitting Bacsa's statement vis-a-vis Mramor's confrontation rights, we note that Mramor contends that, under Ohio Rev.Code Sec. 2923.03(D), Mramor could not be convicted by the uncorroborated testimony of his codefendant Prenc. Therefore Mramor contends that the erroneous admission of Bacsa's statement could not be harmless error. Section 2923.03 reads:
 Sec. 2923.03 Complicity.
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 * * *
 (D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 We find that even if the jury gave no weight to Bacsa's statement, other evidence corroborated Prenc's testimony and supported Mramor's conviction. For example, a witness to Evans' shooting called the police and provided the truck's license plate number leading to Mramor's arrest. The murder weapon was found by the police when Mramor was arrested in the car in which he had been riding after the shooting. Moreover, Mramor was identified by Mrs. Evans, her son, and at least one eyewitness.