OPINION
{¶ 1} John Wise timely appeals the September 8, 2005, determination of the Jefferson County Court of Common Pleas, Juvenile Division, that he was a delinquent child for having committed felonious assault with a firearm. Appellant was ordered to serve a minimum of one year of incarceration for felonious assault consecutive to a mandatory term of two years for the gun specification, with the total maximum term not to exceed his twenty-first birthday.
 {¶ 2} On appeal, Appellant argues that the juvenile court erred in sentencing him to two years on the firearm specification. He also argues that his right to a fair trial under the Fourteenth Amendment and hisSixth Amendment right to confront witnesses were violated when the court permitted the introduction of the prior testimony of a state witness. He also argues that the state violated his right to a fair trial in failing to provide an exculpatory witness statement and that the trial court permitted several other incidents of prosecutorial misconduct. For the following reasons, Appellant's assignments of error are overruled. We hereby affirm his delinquency determination and sentence in full.
 {¶ 3} Appellant and his companion on the evening in question, Ryant Creech, were tried together. The record reflects that on March 17, 2005, Appellant was a passenger in Creech's car in Steubenville, Ohio. Creech was driving. The witnesses, Mary Matthews and her son Evan, were in their vehicle in the turning lane waiting to turn into a Kroger's parking lot. The Creech vehicle was stopped behind a gray car, and both were headed in the opposite direction of the Mathews' vehicle in the opposite lane of travel. *Page 2 
 {¶ 4} Evan saw the passenger of the gray car exit the vehicle and yell at someone in the Creech vehicle. Both cars turned right onto another street and the Matthews car pulled behind them. Evan testified that he saw Creech pull out a handgun and shoot at the gray car approximately three or four times. The Matthews quickly drove away.
 {¶ 5} Jayce Hancock was the owner and driver of the gray car. He testified at trial that he did not recall the evening in question. However, he said that he had testified truthfully at the preliminary hearing, but he now remembers nothing of the incident. Hancock was deemed a hostile witness and the state questioned him regarding his prior testimony in which he stated that Appellant was the shooter on the night in question. (Trial Tr., p. 97.)
 {¶ 6} Westley Bowling, the passenger in the Hancock car, also testified at Appellant's trial. Bowling likewise could not recall the substance of his prior testimony or the evening in question at trial. However, after treating him as a hostile witness, it was brought out that Bowling's prior hearing testimony identified both Appellant and Creech as the shooters on March 17, 2005. Bowling said that Appellant fired first at the Hancock vehicle. Appellant then handed the gun to Creech, who also shot at the Hancock car. (Trial Tr., pp. 107, 109, 115-116.)
 {¶ 7} In addition, the investigating officers testified that they recovered ten spent .380 caliber shell casings and two projectiles at the scene. The shell casings were found in two separate locations, which indicated that the gun had been fired in two different locations, and actually, was consistent with the theory that there were *Page 3 
two individuals firing the gun. Further, both of Appellant's hands tested positive for gun shot residue. (Trial Tr., pp. 21, 79-81.)
 {¶ 8} In Appellant's first assignment of error he claims:
 {¶ 9} "THE JUVENILE COURT ACTED OUTSIDE ITS AUTHORITY BY COMMITTING JOHN WISE TO A MANDATORY 2 YEARS BASED UPON THE RC 2941.141 FIREARM SPECIFICATION CONTAINTED [SIC] IN THE COMPLAINT BECAUSE A RC 2941.141
FIREARM SPECIFICATION AUTHORIZES A JUVENILE COURT TO IMPOSE A MAXIMUM COMMITMENT PERIOD OF UP TO 1 YEAR"
 {¶ 10} Appellant argues that the trial court erred in sentencing him to two years in prison for the use of a firearm in the commission of his underlying offense. He says that his charging instrument, the March 21, 2005 complaint, included a single firearm specification indicating that he had been charged with a violation of R.C. § 2941.141.
 {¶ 11} However, the March 21, 2005, complaint states in pertinent part:
 {¶ 12} "SPECIFICATION: It is further specified that this juvenile had a firearm on or about his person or under his control while committing the offense of Felonious Assault."
 {¶ 13} Contrary to Appellant's assertions, the complaint does not mention R.C. § 2941.141.
 {¶ 14} Appellant argues that if he was an adult, wording of the specification only authorized the trial court to impose a one-year sentence pursuant to R.C. § 2941.141. R.C. § 2941.141 states: *Page 4 
 {¶ 15} "`SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.)'"
 {¶ 16} Unlike R.C. § 2941.141, R.C. § 2941.145 specifically authorizes a three-year mandatory prison term for an offender who, "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." (Emphasis added.)
 {¶ 17} R.C. §§ 2941.141 and 2941.145 apply to adults. Juvenile court provision R.C. § 2152.17(A), entitled felony specifications, states in pertinent part,
 {¶ 18} "* * * if a child is adjudicated a delinquent child for committing an act, other than a violation of section 2923.12 of the Revised Code, that would be a felony if committed by an adult and if the court determines that, if the child was an adult, the child would be guilty of a specification of the type set forth in section 2941.141,2941.144, 2941.145, 2941.146, 2941.1412, 2941.1413, or 2941.1414 of the Revised Code, in addition to any commitment or other disposition the court imposes for the underlying delinquent act, all of the following apply:
 {¶ 19} "(1) If the court determines that the child would be guilty of a specification of the type set forth in section 2941.141 of the Revised Code, the court *Page 5 
may commit the child to the department of youth services for the specification for a definite period of up to one year.
 {¶ 20} "(2) If the court determines that the child would be guilty of a specification of the type set forth in section 2941.145 of the Revised Code * * *, the court shall commit the child to the department of youth services for the specification for a definite period of not less than one and not more than three years, and the court also shall commit the child to the department for the underlying delinquent act under sections2152.11 to 2152.16 of the Revised Code."
 {¶ 21} Thus, a juvenile who commits a crime that, if committed by an adult, would amount to a felony in violation of R.C. § 2941.145, he can be sentenced for a definite term of one to three years of incarceration for the gun specification.
 {¶ 22} In the instant matter, Appellant was found to have committed a felonious assault, which is a second degree felony if committed by an adult. In addition, the charging complaint clearly stated that Appellant was charged with having, "a firearm on or about his person or under hiscontrol while committing the offense of Felonious Assault." Appellant takes issue with the fact, however, that the specification in his complaint lacked language corresponding to the second half of R.C. § 2941.145 which states that the offender, "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 23} Appellant is correct that this language is not in the specification. Instead, the language in his charging instrument closely matches language found in *Page 6 
R.C. § 2941.141. Thus, read in a vacuum, it is possible that the charging document can be interpreted to put Appellant on notice that he was only facing a one-year maximum term for the firearm specification.
 {¶ 24} However, Appellant does not discuss the fact that the complaint does mention the use of a weapon in the commission of the underlying offense. It states in part, "[t]his juvenile * * * did knowingly cause or attempt to cause physical harm to another by means of a deadlyweapon[.]" (Emphasis added.) (March 21, 2005, Complaint.) Thus, Appellant was or should have been on notice that he was charged with using the deadly weapon, (a gun) in facilitating the offense.
 {¶ 25} In Matter of Laquatra (Jan. 22, 1998), 8th Dist. No. 72020, the court of appeals upheld a juvenile court's imposition of a three-year gun specification even though there was no gun specification mentioned at all in the charging instrument. In so doing, the court gave two reasons: first, the juvenile was on notice that he was facing this gun specification. Second, the court determined that the juvenile court possessed the discretion to do so under former R.C. § 2151.355(A)(7). Id. at 2.
 {¶ 26} In Laquatra, the charging document mentions that the crime was committed through use of a handgun, but the document does not ever specifically allege a violation of either statutory gun specification. However, the juvenile was on notice that he could be sentenced to a gun specification because, the court of appeals reasoned, the charging document in delinquency matters are not construed as strictly as in regular criminal indictments. The court held that so long as the facts alleged and proved in the juvenile matter support the violation, the court is free to find *Page 7 
such a violation. In Laquatra, the underlying charge alleged use of a gun and this fact was proved at the hearing on the matter. Further, the trial court was within its discretion granted by the statute governing the matter of juvenile gun specifications, R.C. § 2151.355(A)(7)(a), to decide any dispositions regarding this matter it found proper. Id. at 4.
 {¶ 27} We note that while R.C. § 2151.355 was repealed in 2000, the subsequent version, 2152.17(A)(2), cited and discussed earlier, contains virtually identical language. Thus, Laquatra appears to be dispositive of this issue. However, as Appellant's arguments seem to be based on his belief that, if he were an adult, only the one-year specification was specifically listed within his charging complaint, we note that this argument also fails in the regular course of criminal complaints.
 {¶ 28} In State v. Muncy (Feb. 8, 1999), 12th Dist. No. CA98-03-013, Mr. Muncy complained that his firearm specification, as found in the indictment against him, failed to contain all of the essential elements because it failed to correctly cite to and track the language of R.C. § 2941.145 for a three-year specification. The court of appeals held that, while it would have been preferable if the document accurately cited the language of the correct specification, the indictment as a whole contained sufficient language to put the accused on notice that he was facing a three-year gun specification charge even if the exact language within the specification portion may not. Id. at 6.
 {¶ 29} Based on the state of the law, then, it is clear that Appellant was aware from the charging document in its entirety that he faced the possibility of up to a *Page 8 
three-year gun specification for the charged crime. While the language of the specification itself may not have clearly spelled this out, certainly the language describing his underlying charge told him he was charged with using a deadly weapon to facilitate the offense.
 {¶ 30} Appellant's assignment of error fails and the trial court's determination as to his gun specification is affirmed.
 {¶ 31} Appellant's second assignment of error states:
 {¶ 32} "JOHN WISE'S RIGHT TO A FAIR TRIAL UNDER THEFOURTEENTH AMENDMENT WAS VIOLATED WHEN THE COURT IMPROPERLY ALLOWED THE STATE TO IMPEACH WES BOWLING AND JAYCE HANCOCK WITHOUT DEMONSTRATING GENUINE SURPRISE AND AFFIRMATIVE DAMAGE UNDER EVIDENCE RULE 607."
 {¶ 33} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand."Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291.
 {¶ 34} Appellant argues that the trial court impermissibly allowed the prosecutor to impeach its own witness at trial, Wesley Bowling, with prior testimony from a preliminary hearing. Appellant claims that the state did not show it was surprised or affirmatively damaged by Bowling's trial testimony pursuant to Evid.R. 607, and as such, Bowling's prior statement should not have been allowed to impeach this testimony. *Page 9 
 {¶ 35} Evid.R. 607, entitled impeachment, states in part: "(A)Who May Impeach. The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statementonly upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803." (Emphasis added.)
 {¶ 36} The record shows that Wesley Bowling was present at Appellant's trial as a state's witness. He stated that he recalled testifying at an April 28, 2005, preliminary hearing in this matter. However, Bowling claimed that he did not recall the substance of his earlier testimony and that he could not at trial recall the events that occurred on the evening of March 17, 2005. (Tr., pp. 106-107.)
 {¶ 37} Contrary to Appellant's argument that the testimony of the preliminary hearing was introduced to impeach the witness, the transcript reveals that the trial court deemed Bowling a hostile witness and permitted leading questions on direct examination pursuant to Evidence Rule 611, which states in part:
 {¶ 38} "(A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 {¶ 39} "* * * *Page 10 
 {¶ 40} "(C) Leading questions. Leading questions could not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
 {¶ 41} A review of Bowling's trial testimony reveals that he testified that he did not recall the incident of March 17, 2005. He said he remembered "nothing" and that he could not even remember that day. However, Bowling did indicate that he recalled testifying on April 28, 2005, and that he told the truth at the preliminary hearing. (Trial Tr., pp. 106-107.) Thereafter, the court declared Bowling a hostile witness and he was asked the following by the state:
 {¶ 42} "Q So, Mr. Bowling, you recall being in the courtroom on April 28th, 2005, testifying at a preliminary hearing involving this case, correct?
 {¶ 43} "A Yeah.
 {¶ 44} "Q Okay. And at that time do you recall being placed under oath?
 {¶ 45} "A Yeah.
 {¶ 46} "Q And you stated that you testified truthfully on April 28th, 2005.
 {¶ 47} "A Yeah.
 {¶ 48} "Q That today you can not recall anything that happened on March 17, nor can you recall anything that you testified to on April 28th, 2005, is that correct?
 {¶ 49} "A Yeah. *Page 11 
 {¶ 50} "Q And if I were to show you the transcript of your testimony would that refresh your memory, yes or no?
 {¶ 51} "A No." (Trial Tr., pp. 109-110.)
 {¶ 52} Bowling did confirm that all three attorneys asked him questions at the preliminary hearing. He also stated that he was given a full opportunity to answer. (Trial Tr., p. 110.) Thereafter, Bowling was asked at trial if he recalled being asked particular questions, which the state quoted from the hearing transcript. Bowling responded in the affirmative. However, he denied recalling any of his responses, which were also read into the trial transcript. The questions and answers read at trial during Bowling's direct testimony included:
 {¶ 53} "Q Okay. `Did you know who was shooting in your direction?' Your answer, `John Wise started shooting first.' `Question: And did anyone else shoot at you?' Your answer, `He passed the gun to Creech.' `Question: And did you see Creech shoot at you?' `Yes, sir.' `How many shots were fired?' You didn't answer. `Question: So you identified John Wise as shooting a gun at you and Jayce Hancock while you were in between those two houses across the street from DeGregory's, correct? [sic] Your answer, `Yes, sir.' `Question: And you also said that you saw Ryant Creech also shoot at you and Jayce Hancock at the same place.' You said, `Yes, sir.' `How many shots were fired in your direction?' You said, `Many, nine or ten.'
 {¶ 54} "* * * Mr. Bowling, you were under oath when you gave this testimony that was recorded on April 28th, 2005, were you not? *Page 12 
 {¶ 55} "A Yeah.
 {¶ 56} "Q Did you tell the truth on that day?
 {¶ 57} "A I guess.
 {¶ 58} "Q What do you mean you guess?
 {¶ 59} "A I mean it's on the paper, isn't it?
 {¶ 60} "Q And those are your words. Did you testify truthfully, sir?
 {¶ 61} "A Yeah." (Trial Tr., pp. 115-116.)
 {¶ 62} The Eighth District Court of Appeals addressed a similar issue in State v. Darkenwald, 8th Dist. No. 83440, 2004-Ohio-2693. The court in Darkenwald stressed the difference between impeaching a witness' testimony via Evid.R. 607 as compared to developing a witness' testimony under Evid.R. 611. Impeachment involves testing a witness' veracity whereas Evid.R. 611 deals with interrogation by leading questions. Id.
 {¶ 63} The defendant's daughter in Darkenwald was called as a state witness in order to testify consistent with her prior written statement provided to the police. However, she was uncooperative at trial, indicating that she did not want to participate. In upholding the state's cross-examination of her as a hostile or adverse witness, the court explained that the witness had not contradicted her prior statement but that she refused to recall the facts from her original statement. Id. at ¶ 27. Accordingly, Evidence Rules 613 and 607 did not apply.
 {¶ 64} This was also the case in State v. Burroughs (Dec. 16, 1999), 7th Dist. No. 93-CA-13, in which this Court considered comparable facts. The witness in *Page 13 Burroughs was asked approximately eight times to repeat her answers on direct examination, which were inaudible. After review we stated,
 {¶ 65} "the court was within its discretion to take steps to control the mode of questioning to avoid needless consumption of time. Evid.R. 611(A). Furthermore, the exception which disallows leading one's own witness, `except as may be necessary to develop his testimony,' provides the trial court with great discretionary latitude. State v. Lewis
(1982), 4 Ohio App.3d 275, 278. Here, the trial court was permitted to allow a change in the mode of questioning to efficiently develop [the witnesses'] reluctant testimony." Id. at 2.
 {¶ 66} Based on the foregoing, and contrary to Appellant's arguments, Bowling's credibility was not attacked by his prior inconsistent statement pursuant to Evid.R. 607. Instead, Bowling's prior testimony was consistent with his trial testimony. He testified at trial that he recalled testifying before and that he had told the truth. However, at trial he was uncooperative and claimed that he could not remember his previous testimony. He never testified to the contrary. The trial court was within its discretion in allowing the leading questioning, and this assignment of error lacks merit and is overruled. Evid.R. 611 (C).
 {¶ 67} Appellant's third assignment of error is closely related to his second assignment of error. It asserts,
 {¶ 68} "JOHN WISE'S RIGHT TO A FAIR TRIAL UNDER THEFOURTEENTH AMENDMENT AND THE SIXTH AMENDMENT'S RIGHT TO CONFRONT *Page 14 
WITNESSES WAS VIOLATED BY THE IMPROPER ADMISSION INTO EVIDENCE OF HEARSAY STATEMENTS OF WES BOWLING"
 {¶ 69} The Sixth Amendment to the United States Constitution contains the Confrontation Clause, which states, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The right of confrontation applies to juvenile delinquency hearings. In re Sturm, 4th Dist. No. 05CA34, 2006-Ohio-3122, ¶ 17, citing In re Gault (1966), 387 U.S. 1, 30, 87 S.Ct. 1428.
 {¶ 70} Appellant argues in this assignment that the trial court erred in allowing the admission of Bowling's prior hearing testimony in its entirety as evidence. Appellant claims that it was inadmissible hearsay.
 {¶ 71} Ohio Evid.R. 801(C) defines hearsay as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evidence Rule 804(B) sets forth exceptions to the hearsay rule. It states in part,
 {¶ 72} "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 {¶ 73} "(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, *Page 15 
cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."
 {¶ 74} Evidence Rule 804(A) defines unavailability as a witness, and it includes when a witness, "testifies to a lack of memory of the subject matter of the declarant's statement[.]" Evid.R. 804(A)(3).
 {¶ 75} In State v. Young (1984), 20 Ohio App.3d 269, 272,485 N.E.2d 814, the Eighth District Court of Appeals considered the unavailability of a witness. The witness in Young was found "unavailable" despite his presence at trial, since he testified that he could not recall the subject of his prior testimony as a result of physical and emotional problems. It was held on appeal that the determination of a witness' lack of memory was within the trial court's discretion. Further, the court of appeals noted, "[e]ven in situations where a witness is unresponsive and uncooperative on the stand, the court can admit into evidence the witness' former testimony." Id. at 273, citingCalifornia v. Green (1970), 399 U.S. 149, 167-168, 90 S.Ct. 1930.
 {¶ 76} As earlier discussed, Bowling was present and testified at Appellant's trial. However, on direct examination, Bowling indicated that he recalled giving his prior preliminary testimony and that it was truthful, but he could not recall the substance of this testimony or the evening in question. Further, Appellant's counsel was able to fully cross-examine Bowling during his prior testimony. His testimony was also consistent with Hancock's testimony. Thus, as in Young, supra, Bowling's *Page 16 
testimony was not hearsay and was admissible based on Evid.R. 804(A) and (B). As such, this assignment of error lacks merit and is overruled.
 {¶ 77} Appellant's fourth assignment of error asserts,
 {¶ 78} "JOHN WISE'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE STATE OF OHIO FAILED TO PROVIDE IN DISCOVERY WES BOWLING'S EXCULPATORY STATEMENT TO THE PROSECUTION THAT HE DID NOT REMEMBER THE EVENTS OF 17 MARCH 2005"
 {¶ 79} Here, Appellant argues that the prosecution did not share material information with Appellant's counsel before the commencement of trial. Appellant claims that the state erred in failing to disclose Bowling's statement to the prosecutor in advance of trial that Bowling no longer remembered the events on the evening in question. As a result, Appellant claims that he was denied a fair trial.
 {¶ 80} Appellant directs this Court's attention to Juv.R. 24, which states in pertinent part,
 {¶ 81} "(A) Request for discovery. Upon written request, each party of whom discovery is requested shall, to the extent not privileged, produce promptly for inspection, copying, or photographing the following information, documents, and material in that party's custody, control, or possession:
 {¶ 82} "* * *
 {¶ 83} "(6) * * * In delinquency and unruly child proceedings, the prosecuting attorney shall disclose to respondent's counsel all evidence, known or that may *Page 17 become known to the prosecuting attorney, favorable to the respondent and material either to guilt or punishment." (Emphasis added.)
 {¶ 84} It is undisputed that Appellant made a written discovery request as required by Juv.R. 24(A). On appeal, the state disputes that Bowling advised the prosecutor before trial that he no longer recalled the events in question. However, a review of Bowling's cross-examination supports Appellant's assertions:
 {¶ 85} "Q Mr. Bowling, you have, in answer to [the prosecutor's] questions, when he asked you did you read a copy of the transcript you said no, correct?
 {¶ 86} "A No. He gave me a copy but I threw it away.
 {¶ 87} "Q Okay. When did you meet with [the prosecutor]? Was it this week?
 {¶ 88} "A Last week.
 {¶ 89} "Q Last week. And did you tell him — did you tell him that you don't remember what happened on March 17th?
 {¶ 90} "A Yes, I did." (Trial Tr., p. 117.)
 {¶ 91} There is no evidence to the contrary. Thus, based on Bowling's testimony, it appears that the state failed to satisfy its continuing duty and responsibility to supplement discovery. Juv.R. 24(A)(6). The fact that a key victim witness no longer recalls the incident in question one week before trial certainly warrants disclosure to defense counsel.
 {¶ 92} However, on review of the alleged violations of the exculpatory criminal discovery rule, the Ohio Supreme Court has held that violations of Crim.R. 16 are only to be reversed on a showing of the following: "(1) the prosecution's failure to *Page 18 
disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect."State v. Joseph (1995), 73 Ohio St.3d 450, 458, 653 N.E.2d 285,cert. denied Joseph v. Ohio (1996), 516 U.S. 1178, 116 S.Ct. 1277, citing, State v. Parson (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689.
 {¶ 93} In the instant case, there is no indication that the violation was willful. In addition, it is not apparent how the state's failure was prejudicial, because Bowling had already testified at the preliminary hearing subject to cross-examination.
 {¶ 94} In addition, even if we exclude Bowling's testimony, Jayce Hancock had previously testified that Appellant was one of the shooters that night. (Trial Tr., p. 97.) Further, the fact that both of Appellant's hands tested positive for gun shot residue was also in evidence at trial. (Trial Tr., p. 21, State's Exh. 1.)
 {¶ 95} Accordingly, while the state appears to have failed to comply with its continuing obligation pursuant to Juv.R. 24, this error cannot be said to affect the outcome of Appellant's trial. This assignment of error is overruled.
 {¶ 96} In Appellant's fifth and final assignment of error he asserts:
 {¶ 97} "PROSECUTORIAL MISCONDUCT CAUSED AN UNFAIR ADJUDICATORY HEARING BECAUSE OF THE PROSECUTION'S FAILING TO COMPLY WITH THE RULES OF DISCOVERY, BY NOT DISCLOSING THE WRITTEN STATEMENTS OF MARY WILLIAMS AND ALEXIA LYONS, BY NOT PROVIDING THE BCI LABORATORY REPORT OF THE SHELL CASINGS AND BULLET FRAGMENTS (ITEM #4 IN STATE'S EXHIBIT #22), BY NOT DISCLOSING *Page 19 
THE GUN SHOT RESIDUE TEST PERFORMED ON WES BOWLING ON 17 MARCH 2005, BY NOT DISCLOSING THE EXCULPATORY STATEMENT OF WES BOWLING AND WES BOWLINGS [SIC] FELONY CONVICTION, THE PHOTO ARRAY NOTICE SIGNED BY EVAN MATTHEW [SIC]"
 {¶ 98} Appellant takes issue with several other alleged prosecutorial errors in Appellant's case. First, Appellant claims it was error for the prosecutor to fail to disclose two witness statements to Appellant in advance of trial. Appellant alleges that he did not receive copies of the written statements made by Mary Williams and Alexis Lyons. Appellant claims that Mary Williams is the mother of Alexis and Cory Lyons. Cory was allegedly in the back seat of Creech's vehicle on the evening in question.
 {¶ 99} Juv.R. 24 may have required the disclosure of these witness statements in the instant case. It states in part,
 {¶ 100} "(A) Request for discovery. Upon written request, each party of whom discovery is requested shall, to the extent not privileged, produce promptly for inspection, copying, or photographing the following information, documents, and material in that party's custody, control, or possession:
 {¶ 101} "(1) The names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense;
 {¶ 102} "(2) Copies of any written statements made by any party or witness;
 {¶ 103} "* * * *Page 20 
 {¶ 104} "(C) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an order issued pursuant to this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances."
 {¶ 105} Again, the Ohio Supreme Court has held that the nondisclosure of potentially exculpatory evidence in a criminal case is not reversible error unless Appellant shows that the prosecution's nondisclosure was willful; that the information would have benefited the defense; and that Appellant was prejudiced as a result. Joseph, supra.
 {¶ 106} There is no allegation that the nondisclosure of Mary Williams' and Alexis Lyons' statements was willful or that these would have benefited Appellant's defense at trial.
 {¶ 107} Although the actual witness statements are not in the trial court's record, the record reveals that Detective Holzworth testified that he took the statements of Mary Williams and Alexis Lyons and gave them to the prosecutor's office. According to Holzworth, a summary of these two witness statements was contained in the police report. (Trial Tr., pp. 161, 165, 166.) Based on the police report, Appellant evidently knew that Mary Williams and Alexis Lyons had given statements to the police. Thus, his counsel could have investigated their statements further in advance of trial. *Page 21 
 {¶ 108} Holzworth also testified that these two witness statements only contained information concerning Appellant's arrest and Cory Lyons' alibi. The arrest occurred at the Lyons' residence. The statements evidently did not refer to the actual shooting. Neither Mary Williams nor Alexis Lyons testified at trial. It does not appear the two were actually witnesses, "to the occurrence that forms the basis of the charge or defense[.]" Juv.R.24(A)(1). While Juv.R. 24 was technically not violated, the prosecutor should certainly err on the side of caution and disclose any and all documents, statements, or other evidence that even arguably fall under Juv.R. 24.
 {¶ 109} Appellant next takes issue with the fact that he never received a report relating to the analysis of shell casings and bullet fragments that were sent to the Bureau of Criminal Investigation laboratory for analysis. In support, Appellant points out that Detective Holzworth testified at trial that he gave this report to the Jefferson County Prosecutor's office.
 {¶ 110} However, Appellant again fails to point out how this nondisclosure could have aided his defense; he does not assert that the nondisclosure was willful; and he does not explain how the nondisclosure was prejudicial. Accordingly, while the state may have erred in failing to provide this report to Appellant, it did not affect the outcome of his trial.
 {¶ 111} Lastly, Appellant claims the state failed to disclose that witness Westley Bowling's right hand tested positive for gun shot residue and that Bowling was convicted of carrying a concealed weapon based on the incidents of the evening *Page 22 
in question. Notwithstanding, Appellant appears to admit in his brief on appeal that he knew Bowling had been charged with carrying a concealed weapon that night.
 {¶ 112} Further, Appellant's co-defendant obviously knew of Bowling's conviction since his counsel elicited testimony to this effect during Steubenville Police Detective Mark Taylor's testimony. Taylor confirmed at trial that when Bowling was arrested on the night in question he possessed a gun and he was subsequently convicted for carrying a concealed weapon. Detective Holzworth also testified that Bowling was arrested for carrying a concealed weapon. However, Holzworth stated that Bowling's gun could not have left any of the casings at the scene of the incident since the recovered casings all came from a .380 semi-automatic. Bowling had a .38 special revolver, which traps its spent casings until someone manually removes them. (Trial Tr., pp. 87, 138.) Further, there was no testimony even tending to establish that Bowling shot at Appellant and Creech on the night in question.
 {¶ 113} Again, while the prosecution was somewhat less than completely compliant in its discovery obligations in this case, we cannot find that these errors resulted in Appellant's conviction. The evidence presented at trial supports his delinquency determination even absent Bowling's testimony.
 {¶ 114} In conclusion, we hereby overrule Appellant's assignments of error on appeal and affirm his delinquency determination and sentence.
Donofrio, J., concurs.
DeGenaro, P.J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion. *Page 23