OPINION
{¶ 1} Donald Durbin was found guilty, after a trial by jury, of criminal damaging. After obtaining a presentence investigation, the trial court imposed a sentence of 90 days, 60 days of which were suspended, and a $250 fine. The trial court also placed Durbin on three years probation which included several requirements and restrictions.
 {¶ 2} On appeal, Durbin presents three assignments of error.
 {¶ 3} "1. The court erred by failing to prohibit the prosecutor from testyfying [SIC] and vouching for the evidence in closing argument."
 {¶ 4} The State's case consisted primarily of the testimony of Linda Thompson. Thompson testified that around 9:30 p.m. on September 17, 2002, she observed Durbin flatten two tires of a van owned by Dean Bruce Porter which was parked at Fairborn High School. Thompson testified that she observed Durbin as she sat in her car, waiting for her son to return on a school bus coming from Springboro, where his junior varsity team had played a soccer game.
 {¶ 5} Porter, the owner of the van, helped coach the varsity soccer team. Durbin was the father of two young men who had played for the varsity soccer team. Durbin was admittedly critical of Porter as a person and as a coach.
 {¶ 6} Durbin claimed he was not at Fairborn High School the night of September 17. He testified that he stayed until the end of the varsity game in Springboro — approximately 9:15 p.m.; talked by cell phone to his former wife, Diane, who was also at the game, between 9:17 and 9:21 from the parking lot in Springboro; and then returned to Fairborn where — after a stop at McDonald's on Kaufman — he went to his girlfriend's apartment. Durbin's former wife testified that she had spoken to Durbin between 9:17 and 9:21. She could not be sure that Durbin was talking to her from the Springboro parking lot, but said she didn't hear a car start, engine noise or traffic noise. She further testified that — based on when she last saw Durbin at the game — he could have left the game as early as 9:10. The girlfriend, Vanessa Bryant, testified that she lived 5-10 minutes from the high school and that Durbin had arrived at her apartment before 10:00 p.m: "10 minutes until 10:00, around there."
 {¶ 7} Under this assignment, Durbin complains that the prosecutor (1) testified during closing argument and (2) impermissibly vouched for the credibility of Linda Thompson. Defense counsel did not object during the prosecutor's closing argument so we employ plain error analysis in determining this assignment.
 {¶ 8} Durbin illustrates his contention that the prosecutor testified with the following extracts from his closing argument.
 {¶ 9} During the opening phase of closing argument, the prosecutor argued:
 {¶ 10} "We will stipulate to the time frame that Mr. Durbin testified to. Mr. Durbin testified he thought he left the soccer game around 9:10 and arrived at his girlfriend's house at about 9:35. I believe she testified to that as well. I have no problem with that, that time frame. In my opinion that time frame more than allows Mr. Durbin to commit this act. It is not a factual impossibility, which is what I think they want you to believe. I am familiar with Fairborn. I'll let you be the judge on the time frame it — on the time it takes to get from Five Points to Fairborn High School.
 {¶ 11} "You heard his girlfriend testify she lived close to Five Points in Fairborn, in close proximity to that location. There is nothing impossible about the chain of events even if you take and fully believe everything Ms. Durbin testified to today about his time frame. His time frame is not incompatible with what we are alleging. It certainly doesn't take a long time to slash 2 tires." (This quotation exceeds that contained in Durbin's brief in order to provide the context in which the statement was made).
 {¶ 12} During Durbin's closing argument, his attorney argued that the evidence was that Durbin left Springboro at 9:21 and arrived at Vanessa Bryant's apartment in Fairborn at 9:50.
 {¶ 13} During the rebuttal phase of closing argument, the prosecutor argued:
 {¶ 14} "I again will use the time frame that Mr. Brezine just presented to you. He basically thinks that Mr. Durbin left the soccer game at 9:21 and arrived at his girlfriend's house at 9:50. That is 29 minutes, and that's from Springboro. That would be quite a feat, stopping at McDonald's, if not near impossible, particularly given the route that the Defendant testified on how he got there. He did not testify that he came the most direct route. He didn't come 48, to 675, to home. He came 75, down to Route 4, and down Route 444. It is almost factually impossible to get from Springboro — and that is for you to decide, whether it is factually impossible. Maybe you don't know where Springboro is, maybe you do. 29 minutes, using the time frame Mr. Brezine used in his closing, it is our contention that is not possible."
 {¶ 15} Durbin's first contention is that the prosecutor distorted the evidence by stating that his time frame for traveling from Springboro to Fairborn was 9:10 — 9:35 p.m. This statement did misstate the evidence although it appears to have been unintentional as the prosecutor said he was stipulating Durbin's own time frame. In any event, any possible harm was obviated when, in rebuttal, the prosecutor accepted the time frame asserted by Durbin's counsel during his closing argument.
 {¶ 16} Durbin next contends as to the opening phase of the prosecutor's closing argument that the prosecutor impermissibly "(gave) his opinion concerning the distances involved in the Appellant's route." The only distance implicated in the opening phase of the State's closing argument is the distance between Fairborn High School and Five Points. Vanessa Bryant testified she lived on West Funderburg which is near Five Points and that she estimated she lived 5 — 10 minutes from the high school. There being some evidence of the distance between Five Points and the high school, we find nothing objectionable in the prosecutor's statement.
 {¶ 17} Durbin next contends, as to the rebuttal phase of the prosecutor's closing argument (1) that only the prosecutor testified as to the most direct route from Springboro to Fairborn, and (2) only the prosecutor testified as to travel time between Springboro and Fairborn.
 {¶ 18} We agree that there was no direct testimony as to the most direct route and the prosecutor's argument does suggest that SR48 to I-675 "to home" is more direct than I-75 to SR4 to SR 444, the route Durbin said he took. We disagree that there was no direct testimony as to travel time. Coach Porter testified that the travel time was "probably a 45-minute trip by bus."
 {¶ 19} In our judgment, the prosecutor's suggestion as to what is the quicker route is innocuous when viewed in the context of the entirety of his rebuttal remarks on this subject and of the evidence.
 {¶ 20} Other than suggesting there was a quicker route back to Fairborn from Springboro than the route Durbin took, the prosecutor provided the jury with no usable information. Indeed, the jury had no evidence as to Springboro — Fairborn travel time which was specific either to Durbin's route or the quicker route suggested by the prosecutor. The only evidence as to travel time was that supplied by Porter: 45 minutes by bus. The prosecutor's argument on rebuttal was that it would have been impossible for Durbin to have driven from Springboro to Bryant's residence in Fairborn — with a stop at McDonald's — in 29 minutes. The prosecutor's suggestion that there was a quicker route, without more, would have had little, if any, influence on the jury's assessment of Durbin's testimony. Far more likely to have influenced the jury was the fact that Durbin spoke to his former wife by cell phone, and could have spoken to her while en route from Springboro to Fairborn, rather than from the parking lot in Springboro, enabling him to vandalize Porter's van after 9:21 and still arrive at Vanessa Bryant's residence by 9:50.
 {¶ 21} Any failure of the trial court to prevent the prosecutor from "testifying" during final argument was, at most, harmless error.
 {¶ 22} Turning to whether the prosecutor impermissibly vouched for the credibility of Linda Thompson, Durbin directs our attention to the following passages from the State's closing argument. (Both passages, as quoted in this opinion, exceed what is quoted in Durbin's appellate brief, to better illustrate the context in which the statements were made).
 {¶ 23} Opening phase:
 {¶ 24} "Who has more of an interest in this case, Defendant or Ms. Thompson? The Defendant would have you believe that Ms. Thompson has lied to you today. He never would say, lie, for what reason I'm not sure. The Defendant continued to say maybe she was mistaken in all these instances. However, he said she was mistaken when I was crossing him. On direct, he seems to imply that Ms. Thompson made the story up to better her son's ability to make — become a starter on the soccer team and she made this whole story up about him slashing the tires, seeing him at the soccer game, and seeing his car, simply to benefit her son. I'm sure that is possible. In my opinion, it is not probable. I think you need to weigh the testimony of the Defendant and weigh the testimony of Ms. Thompson, in particular, what interest they have in the outcome of this trial and their demeanor and the manner in which they testified today."
 {¶ 25} Rebuttal phase:
 {¶ 26} "I could not believe that Ms. Thompson lied to you today. That is for you to judge. It is not for me to judge. Again, I'll just reiterate, she testified on the stand, very clearly, that there was not a doubt in her mind that she recognized Mr. Durbin at the school. There was not a doubt in her mind that she passed him at the soccer game. There was not a doubt in her mind that the individual she passed at the soccer game was wearing the same outfit as the individual she saw at the high school. There was not a doubt in her mind that that was his vehicle. Mr. Durbin would have to be the most unlucky guy I have ever met in my life if this is truly a conspiracy. Somebody driving a red, Ford Expedition just happened to come into that parking lot with an identical outfit on that Mr. Durbin was wearing at the soccer game, who also must have had a beef with the soccer coach, who slashed his tires. If you believe that, I think you should find Mr. Durbin not guilty. If you find that as difficult to believe as I do, I think you should find Mr. Durbin guilty."
 {¶ 27} The prosecutor is not permitted to personally vouch for the veracity of the State's witnesses. On the other hand, the prosecutor may certainly argue that a State's witness is more believable than a defense witness so long as the argument is rooted in the evidence.
 {¶ 28} With these principles in mind, we find nothing objectionable in the prosecutor's opening phase statement. His statement "In my opinion, it is not probable." did no more than attempt to persuade the jury that Durbin's explanation of Thompson's motivation was implausible. Presumably, "In my opinion . . ." is what Durbin seizes upon in claiming the prosecutor vouched for Thompson's credibility. However, the prosecutor's opinion was based on the evidence in the case and said in effect to the jury: "based on the evidence, my opinion should be your opinion." Certainly, the prosecutor is permitted to express his assessment of the evidence and to attempt to persuade the jury to adopt his view of the evidence. This was legitimate argument.
 {¶ 29} Durbin points to the first sentence and last two sentences of the above-quoted rebuttal remarks to support his claim of prosecutorial vouching. For the reasons just expressed, we find no impermissible vouching. The prosecutor's disbelief that Thompson had lied is certainly rooted in the evidence.
 {¶ 30} It would probably be better practice for a prosecutor to avoid using the first person in arguing credibility to avoid appellate claims of vouching. In other words, "You should not believe that Ms. Thompson lied to you today (because) . . ." is preferable to "I could not believe that Ms. Thompson lied to you today (because). . . ." That being said, we find no prosecutorial impropriety that the trial court should have stepped in and put an end to.
 {¶ 31} Durbin has not demonstrated prejudicial error, much less plain error.
 {¶ 32} The first assignment of error is overruled.
 {¶ 33} "2. Appellant was denied a fair trial due to the ineffective assistance of trial counsel."
 {¶ 34} Under this assignment, Durbin first claims he was denied effective assistance of counsel because counsel failed to object to certain statements by the prosecutor during closing argument. This claim lacks merit for the reasons stated in our discussion of the first assignment.
 {¶ 35} Durbin's second contention under this assignment is not at all clear. He appears to claim that defense counsel should have had the prosecutor removed from the case because it was necessary that he be called as a defense witness; that it was necessary for the prosecutor to testify because defense counsel inadequately questioned Joan Dautel, the athletic director at Fairborn High School; that after the trial court refused to declare Dautel a hostile witness, defense counsel should have asked the court to call Dautel as its own witness to permit cross-examination of Dautel by both parties without a showing of hostility. The upshot of all this ineffectiveness was the exclusion of evidence supporting the defense claim of fabrication.
 {¶ 36} At trial, defense counsel called Joan Dautel and asked to examine her as on cross-examination. The prosecutor objected and the court denied defense counsel's request until Dautel was shown to be hostile. Dautel was asked whether she "had occasion to communicate with the Prosecutor regarding this case" to which she answered "No." Defense counsel next approached the bench to inform the court he needed to call Ron Lewis, the prosecutor handling the case. During a lengthy sidebar conference, defense counsel recalled a conversation in the court's chambers on a previous occasion during which Mr. Lewis related that he had been receiving calls from Dautel about problems she was having with Durbin. The trial court and Lewis stated that they did not recall the conversation. Indeed, Lewis stated under oath he did not recall the conversation.
 {¶ 37} "MR. BREZINE (defense counsel): I would move to call Ron, but if Ron is telling me what he is going to say —
 {¶ 38} "MR. LEWIS: You can call me, but that's exactly what I would say.
 {¶ 39} "THE COURT: If you want that answer under oath, I would allow a very strange thing to happen.
 {¶ 40} "MR. BREZINE: What?
 {¶ 41} "THE COURT: If you want that answer under oath, I would allow that to happen. It would be extremely unusual that I would allow the Prosecutor to become a witness in a case.
 {¶ 42} "MR. BREZINE: I understand
 {¶ 43} "THE COURT: I could do that right here. I could swear him right now and he could answer that question, if that would help you.
 {¶ 44} "MR. BREZINE: I would appreciate that.
 {¶ 45} "(The Court administered the oath to Ronald Lewis, the Prosecutor).
 {¶ 46} "THE COURT: Mr. Brezine, do you have a question you would like to ask of Mr. Ronald Lewis?
 {¶ 47} "MR. BREZINE: Do you remember — do you remember the first date this case was schedule [sic] for a trial on a Wednesday in January?
 {¶ 48} "MR. LEWIS: I do.
 {¶ 49} "MR. BREZINE: Do you remember that we had a conversation in Judge Barber's office regarding this case that morning?
 {¶ 50} "MR. LEWIS: I do.
 {¶ 51} "MR. BREZINE: Do you remember telling me that we had to take care of this case because you were getting calls from the Athletic Director, Joan Dautel, saying that Durbin was harassing her?
 {¶ 52} "MR. LEWIS: Absolutely not.
 {¶ 53} "MR. BREZINE: I have no further questions.
 {¶ 54} "THE COURT: O.K."
 {¶ 55} Lewis stated that Dautel did speak to another prosecutor, Mike Mayer, about problems with Durbin. Defense counsel did not call Lewis as a witness and declined to call Mike Meyer without knowing "what Mike is going to say. I only heard what Ron said."
 {¶ 56} The most we can glean from the record as to how Durbin might have been prejudiced by his counsel's alleged ineffectiveness is that defense counsel hoped to elicit from Dautel — and if not from Dautel then from the prosecutor — that Dautel had reported to the prosecutor that she was being harassed by Durbin. That harassment, the argument appears to continue, motivated the fabrication of the story told by Linda Thompson that Durbin had damaged Porter's van tires.
 {¶ 57} "THE COURT: I'm sorry. What is the purpose of having Joan Dautel testify?
 {¶ 58} "MR. BREZINE: This gal is calling the Prosecutor's office.
 {¶ 59} "THE COURT: I still don't see how that is relevant to whether your guy slashed 2 tires on a car. How is that relevant?
 {¶ 60} "MR. BREZINE: As I mentioned to the Jury in my opening, I will help them realize why someone would make up a story like that. I'm saying that Joan is part of that department. If she is calling the Prosecutor, that is part of the indication of how they operate over there."
 {¶ 61} Presumably Durbin is now arguing that if defense counsel had examined Dautel more effectively, he would have elicited this evidence from Dautel or at least learned that she had spoken to prosecutor Mayer, whom he could have called to elicit the critical evidence.
 {¶ 62} Assuming for the sake of argument that defense counsel could have been more proficient, this record simply fails to support a reasonable inference that because Dautel reported to a prosecutor — either Lewis or Mayer — that Durbin had harassed her, Linda Thompson fabricated a story that Durbin had vandalized Porter's van.
 {¶ 63} Whatever deficiencies may be attributed to defense counsel, they did not prejudice Durbin.
 {¶ 64} This assignment of error is overruled.
 {¶ 65} "3. THE COURT DEMONSTRATED BIAS AGAINST THE APPELLANT IN SENTENCING HIM."
 {¶ 66} Durbin claims the trial court was biased in sentencing him. Particularly, he points to the court's reference to "an alleged addiction to prescription drugs and to mental health issues." He claims these matters are not relevant to the crime of which he was convicted and are not a matter of record.
 {¶ 67} The trial court ordered a presentence investigation during which Durbin self-reported having had an addiction to prescription drugs and treatment for depression. We have obtained that PSI in order to thoroughly evaluate this assignment of error.
 {¶ 68} In imposing sentence, the trial court addressed Durbin as follows:
 {¶ 69} "THE COURT: Mr. Durbin, I have read everything very carefully. I have read the PSI Report Recommendation probably three times, which is unusual for me. But I read every word of it, every page of it. I'm trying to figure you out, quite frankly, Mr. Durbin. And I don't know that I have succeeded. I do know that I have serious concerns about you.
 {¶ 70} "Some of the things that concern me are, perhaps, your reluctance to share information, in some cases, with Mr. Boutwell (probation officer). Reluctance to share, perhaps, the medical information, which may or may not have been relevant. I'm concerned about your usage of drugs, prescription drugs, yes, but I'm concerned about whether — I do believe you have an addiction. I'm concerned about that and what effect that might have on you. I'm concerned to what extent you have some mental health issues that need to be resolved. Whether or not you have alcohol or drug issues that need to be addressed.
 {¶ 71} "I sat here and listened to the entire trial. I watched you during the trial. That's the advantage to having a Jury Trial, is, that I'm not the one answering the questions, so I have the opportunity to observe and come to conclusions of my own. The Jury found unanimously that you did slash the tires or let the air out of the tires. I concur with them. I had absolutely no problem at all with the Jury's decision and would have found the same way in all likelihood had I been sitting here. But I had the chance to watch you, and that was very important, very telling.
 {¶ 72} "I read carefully the letter that you sent in yesterday. And I'm worried about your not taking responsibility for things, and, yet, at the same time, I have to weigh that and say, Well, he said he didn't do it. He's sticking to that. He said he didn't do it. I'm convinced you did. You said you didn't.
 {¶ 73} "But even so, I still see fault being assessed to other people other than yourself for not just this incident, but the situation, the entire situation. Fault upon the school system, the sports department, attorneys, the Jury. But I don't see you taking the responsibility that I would like to see. I see it as sort of a conspiracy theory or retaliation theory against you.
 {¶ 74} "I am going to fine you $250.00 plus court costs. I am sentencing you to 90 days in jail, no good time, and I am only suspending 60. I am accepting the recommendation of the Probation Department.
 {¶ 75} "The 60 days are suspended on condition there are no future similar violations for five years. I am placing you on up to three years of probation, so that you can get the battery of assessments, alcohol, drug, mental health, anger management assessments. And you must absolutely follow through on any recommendations which are made. They are suspended on condition that you have no contact with Mr. Porter or his family. The days are suspended on condition you pay restitution in the amount of $187.76, through the Probation Department. I don't want you to have any contact with Mr. Porter, so that money will be paid through the Probation Department. We will forward it on to Mr. Porter, or the insurance company, depending on whose pocket that's out of.
 {¶ 76} "I'm also suspending it on condition that you not go onto Fairborn High School property, and I know you're not going to like this one, or attend any of its offsite functions without written consent from the Fairborn High School Athletic Director. And, perhaps, after this is all over and settled down a bit and we get into the fall sports session and if you still have children — do you still have children in that? I know that you wrote to me that you couldn't attend.
 {¶ 77} "MR. DURBIN: Yes, your Honor.
 {¶ 78} "THE COURT: And, next year, that child or those children will still be attending Fairborn High School?
 {¶ 79} "MR. DURBIN: Yes.
 {¶ 80} "THE COURT: Perhaps, once we get into this and things calm down a bit, perhaps Mr. Boutwell can contact the Athletic Director and see whether or not we could lighten that a bit. I think we could, particularly with the offsite functions, and even the sports events outside, so that he could see his child play. Right now, I'm going to make it an order, but, by fall, that might change."
 {¶ 81} There is ample support in the trial transcript and the PSI for the remarks of the trial court and the sentence imposed. The court's sentence reflects a conscientious consideration of the factors set forth in R.C. 2929.22(A).
 {¶ 82} "In determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine, the court shall consider the risk the offender will commit another offense and the need for protecting the public from the risk, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of the fine will impose."
 {¶ 83} Bias, if any, is not apparent from the record.
 {¶ 84} The third assignment of error is overruled.
 {¶ 85} The judgment will be affirmed.
Judgment affirmed.
Brogan, J., concurs.