JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Brian Wilson appeals from his convictions and the sentence imposed after the trial court found him guilty of two counts of felonious assault and one count of possession of criminal tools.
 {¶ 2} Wilson presents three assignments of error, arguing that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence, and that the trial court reneged on a sentencing agreement.
 {¶ 3} Upon a review of the record, this court determines none of Wilson's arguments has merit. Therefore, his convictions and sentence are affirmed.
 {¶ 4} Wilson's convictions resulted from an incident that occurred on the night of April 8, 2006. The victim, Paul Bruce, testified that he lived in the upper portion of a duplex located at 2169 West 106th Street in Cleveland with the mother of his children, Brandy Hardy. The two had an argument, so he decided to leave.
 {¶ 5} He proceeded to the nearby home of a friend. Although the friend currently was incarcerated, the mother of his friend's children still lived there. Her name was Colleen Schade.
 {¶ 6} Hardy often had acted as a child care provider for Schade's children; a few days previously, however, Hardy notified Schade she could no longer provide that service. Bruce was aware that Schade had entered into a relationship with Wilson, but believed the situation had nothing to do with him. He wanted to use Schade's telephone to make a few calls. *Page 3 
 {¶ 7} Bruce knocked at the door, where he was greeted by Schade's oldest daughter. He explained his presence, and she granted him admission. A teenaged girl was inside acting as the new child care provider for Schade's youngsters; Bruce introduced himself, found out the teenager was Wilson's niece, asked to use the telephone, and waited while the teenager finished her own call.
 {¶ 8} When the telephone was free, Bruce joked with the teenager briefly before first attempting to call Schade to inform her of his visit. Schade's line was busy. He then called his workplace to check on his schedule.
 {¶ 9} Bruce decided he needed some cigarettes at that point, and asked if he could make one more call after he went to the convenience store. Upon his return, the teenager admitted Bruce. However, after he made his one more call, but before he concluded his visit, she rushed him out.
 {¶ 10} Bruce proceeded home. On his way, he stopped for a few minutes to "hit a joint" with a friend. He was within "three houses" of his duplex when Wilson "pulled up" next to the sidewalk in a car; Wilson "jumped out" and demanded to know if Bruce had been "threatening [his] niece[.]" Wilson told Bruce he was "going to fight."
 {¶ 11} His voice was loud enough to attract Hardy's attention. She went out on the front porch of the duplex to see Wilson acting in a threatening manner toward her boyfriend. Bruce's attempts to fend Wilson off appeared unsuccessful. Wilson went to his car once to remove his hat and jewelry, and, then again, to use his cell phone; *Page 4 
Wilson told the person who answered his call to meet him at a prearranged place. Bruce fled.
 {¶ 12} Bruce took a route through other residences' rear yards, eventually circling back to his own street. Once there, he observed Hardy speaking with Wilson's sister, so he approached the women. Just as he attempted to explain to Wilson's sister his reason for being at Schade's home, the woman received a cell phone call. A minute or two later, Schade drove up.
 {¶ 13} Schade proceeded to "cuss" at Bruce, stopping the moment at which Wilson's car arrived. Bruce saw Wilson exit the car shouting. Accompanied by his passenger, another man, he ran toward Bruce. Bruce "took off."
 {¶ 14} The two men captured Bruce near a garage a few doors away. While Wilson's accomplice blocked Bruce's progress, Wilson punched Bruce in the side of his head. Bruce went down against the garage.
 {¶ 15} While Bruce remained dazed, Wilson pulled on his legs; as he dragged Bruce away from the garage, his accomplice wielded a baton against Bruce's head. Wilson then stood; he delivered kicks to Bruce's ribs as the other man continued to strike him with the baton.
 {¶ 16} The noise of the beating eventually caused the homeowner to turn on outside lights. Bruce took the opportunity to call for help. At that point, the two assailants fled the scene. Bruce summoned aid; when he subsequently arrived at *Page 5 
the hospital, he required medical treatment for injuries to his face and torso including ten "staples" to close a laceration at his hairline.
 {¶ 17} Wilson eventually was indicted on three counts. The first count charged him with felonious assault in violation of R.C. 2903.11(A)(1),[1] the second with felonious assault in violation of R.C. 2903.11(A)(2),[2] and the third with possession of criminal tools in violation of R.C. 2923.24, to wit: an automobile.
 {¶ 18} Wilson's case proceeded to a bench trial. After listening to the testimony of both the state's witnesses and the defense witnesses, the trial court found Wilson guilty on all counts.
 {¶ 19} The trial court obtained a presentence report before setting a date for the sentencing hearing. On the scheduled date, the parties adjourned into the court's chambers, where the court stated in pertinent part as follows:
 {¶ 20} "* * * Today was the date for sentencing. However, * * * Mr. Wilson wishes to provide information to the prosecutor's office with regard to the other person who was involved in the assault that brought the indictment in this case.
 {¶ 21} "The Court has indicated that it was prepared to sentence Mr. Wilson today, however[,] in connection with this information[,] the Court would reevaluate its decision with regard to the sentence * * * ifMr. Wilson were to provide information *Page 6 regarding the identity and also provide testimony * * * against thisother individual. The Court would reevaluate sentencing at thattime.* * *."
 {¶ 22} Defense counsel clarified that she indicated to Wilson that the court "would consider the minimum of 2 years." The court responded, "Absolutely. The Court was not considering the minimum otherwise."
 {¶ 23} Addressing Wilson directly, the court admonished that he would "need to give a statement directly to the detective which will be * * * transcribed, * * * and you will need to testify consistently * * *." Wilson indicated he would "give it up, everything up."
 {¶ 24} Subsequently, however, Wilson provided a written statement which placed all blame for the attack on Bruce upon his alleged accomplice. In it, Wilson portrayed himself as someone who had tried to rescue Bruce, rather than as one of the assailants. When the case was called for sentencing, Wilson told the court that the perpetrator "wasn't me. I didn't do it * * *." Wilson protested that, "If anything happened, I helped [Bruce] by grabbing this [other] guy * * * and putting him in my car." Wilson maintained that Bruce was "high" and did not realize what he was doing.
 {¶ 25} After reviewing Wilson's written statement, the trial court made it part of the record of the case, permitted the parties to make additional comments, and then stated in pertinent part that it was "surprised" by Wilson's claim that he "had nothing *Page 7 
to do with what happened here," but rather, that he was acting on the victim's behalf. The court further indicated that, at the time of the original sentencing date, although it was not intending to impose the minimum term, it had agreed to consider that sentence if Wilson fully cooperated.
 {¶ 26} The court concluded, in view of the testimony presented at trial, the statements made by the parties, and its statutory duties, to impose a total term of three years for Wilson's convictions.
 {¶ 27} Wilson presents the following three assignments of error for this court's review.
 "I. The state failed to present sufficient evidence to sustain appellant's
 convictions.
 "II. The appellant's convictions are against the manifest weight of the
 evidence.
 "III. The trial court erred when it violated the proffer agreement between the trial court and appellant and the direct and implied promise of a minimum sentence in exchange for information concerning the principal unindicted offender."
 {¶ 28} Wilson argues in his first assignment of error that his convictions are not supported by sufficient evidence, therefore, the trial court erred in denying his motions for acquittal. Consistent with that position, he argues in his second *Page 8 
assignment of error that his convictions are not supported by the manifest weight of the evidence, therefore, they should be reversed.
 {¶ 29} In presenting both arguments, Wilson essentially asserts that since Bruce's testimony demonstrated that Wilson's colleague actually wielded the baton during the attack, and none of the other witnesses actually saw the attack, the evidence failed to establish his own intent to commit the offenses. This court disagrees.
 {¶ 30} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172. Thus, circumstantial evidence alone may be used to support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 31} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the fact-finder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175. This court must remain mindful, however, that the weight of the evidence and the credibility of the witnesses are *Page 9 
matters primarily for the fact-finder to consider. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 32} In this case, when viewed in a light most favorable to the prosecution, the evidence demonstrated that: Wilson concocted a reason to engage in an altercation with Bruce; Wilson used that excuse to summon his cronies, including one who carried a baton, and to drive to Bruce's home; even as Bruce attempted to escape the fight, together, Wilson and his baton-wielding friend set upon Bruce. During the beating, Wilson pulled Bruce by his legs to the ground and held his legs while he received the first blow from the baton. Then, as Bruce lay helpless to defend himself, Wilson continuously kicked Bruce as his friend struck at their victim with the baton.
 {¶ 33} From the foregoing, reasonable minds could conclude that Wilson used his vehicle as a means to come to the scene in order to inflict the beating, that Wilson had the same purpose to inflict harm on Bruce as the man who used the baton, and that he and his accomplice did, in fact, inflict serious physical harm on Bruce by means of a deadly weapon. The trial court, therefore, did not err in denying Wilson's motions for acquittal. State v. Riley, Cuyahoga App. No. 89357, 2008-Ohio-127.
 {¶ 34} Moreover, the state's witnesses presented testimony concerning the events of that night that: 1) provided a consistent and coherent version of the incident; 2) provided a timeline which was verified by cell phone records and 911 *Page 10 
calls; and which, 3) remained unshaken on cross-examination. Wilson's witnesses, on the other hand, provided a story that, when considered in an objective manner, lacked crediblity, congruity, and, most importantly, simple logic.
 {¶ 35} Wilson's convictions, therefore, also find support in the manifest weight of the evidence.
 {¶ 36} Accordingly, Wilson's first and second assignments of error are overruled.
 {¶ 37} In his third assignment of error, Wilson asserts the trial court made a promise to sentence him to the minimum term in exchange for his cooperation in the prosecution of his accomplice. Wilson contends in presenting this assertion that, while he kept his part of the "bargain," the court reneged on its promise. The record, however, supports neither his assertion nor his contention.
 {¶ 38} At the conclusion of trial, the court ordered a presentence report and set the date for sentence. On the date of the hearing, however, the court indicated it would reconsider the sentence it had in mind if Wilson fully cooperated in the prosecution of his accomplice. The court, thus, did not induce the agreement, but decided it would facilitate a resolution by permitting the parties additional time to comply.
 {¶ 39} Wilson did not fulfill his part of the bargain. Instead, he hedged on the agreement by attempting to exonerate himself of all complicity. Although Wilson did provide the name of his accomplice, he nevertheless provided in his written *Page 11 
statement an account that was in derogation of the facts as presented by the state's witnesses.
 {¶ 40} Under these circumstances, since Wilson breached the agreement, the court determined that he did not obtain the full benefits of the negotiated bargain. State v. Gastaldo (Sept. 21, 1998), Tuscarawas App. No. 98AP010006; cf., State v. Walker, (1989), 61 Ohio App.3d 768. It is clear from the court's comments that, nevertheless, it imposed on Wilson something less than its original choice, but not as little as Wilson sought. This was an appropriate compromise.
 {¶ 41} For the foregoing reasons, Wilson's third assignment of error also is overruled.
 {¶ 42} Wilson's convictions and sentence are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] This subsection prohibits an offender from knowingly causing serious physical harm to a victim.
[2] This subsection prohibits an offender from knowingly causing or attempting to cause physical harm to a victim by means of a deadly weapon. *Page 1