[Cite as *State v. Banks*, 2012-Ohio-2495.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97084**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JUAN BANKS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546456

**BEFORE:** Rocco, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 7, 2012

-i-

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio   44113-1901

**APPELLANT**

Juan Banks
Inmate No. 603-214
Toledo Correctional Institution
P.O. Box 80033
Toledo, Ohio   43608

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Scott Zarzycki
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Juan Banks appeals from his conviction after a jury found him guilty of murder with firearm specifications.

{¶2} Banks presents seven assignments of error. He claims the trial court allowed the prosecutor to introduce improper evidence, including hearsay testimony. Banks further claims the prosecutor engaged in misconduct during closing argument. Additionally, Banks asserts his trial counsel provided ineffective assistance by failing to object to the foregoing improprieties. Banks also asserts his conviction is not supported by either sufficient evidence or by the manifest weight of the evidence. Finally, Banks claims that cumulative error contributed to his conviction.

{¶3} This court has reviewed the record in light of Banks's arguments, but finds none has merit. Consequently, Banks's assignments of error are overruled and his conviction is affirmed.

{¶4} Banks's conviction results from a shooting incident that occurred in the early morning of December 11, 2010. The state's witnesses provided the following account of the incident.

{¶5} Robert Filler awoke from sleep at about 3:15 a.m. in his second-floor bedroom to hear an argument going on outside next to his house, which was located at the corner of W. 44th Street and Hyde Avenue in Cleveland. Filler's bedroom window faced

Hyde Avenue. Although the argument seemed to be intensifying, Filler thought that the people involved would soon resolve it because of the cold and snow on the ground, so he tried to return to sleep.

{¶6} However, at approximately 3:30 a.m., Filler heard the sound of a small caliber gun. He got out of bed and looked out his window to see three males. One was "laying on the ground," face up with his head toward the street; another stood over him, "hollering, Come on, Pookie. Let's go. Get up. Let's go."

{¶7} The third man, whom the state alleged was Banks, "was headed east on Hyde" as he walked quickly away from the curb lawn. When Banks reached Filler's driveway, he went onto W. 44th Street and cut into an alley; Filler lost sight of him.

{¶8} Meanwhile, the second male who was later identified as 14-year-old K.J., pulled at the prone man's legs, dragging him a short way closer to the sidewalk. Filler was on the telephone calling 911.

{¶9} K.J. left the fallen man to run to the nearby house of Daisy Rodriguez. Only a few minutes previously, K.J. had been pounding on Rodriguez's door asking for LaSalle Hawthorne, who had left the house in K.J.'s company. Now, K.J. was pounding on the door shouting that Hawthorne, whose nickname was "Pookie," had been shot. Rodiguez and Hawthorne's other friend, Eric Jackson, ran outside to Hawthorne. The police also arrived, followed by an EMS unit.

{¶10} After ascertaining the victim's name, the responders saw that he had sustained a gunshot wound to his abdomen. The EMS technicians transported him to the

nearest hospital emergency room. Efforts to treat Hawthorne were unsuccessful, however; he died of the gunshot wound.

{¶11} Police officers Edward Lentz and James Skernivitz secured the scene, at which they saw several items laying on the snow, including a pair of gloves and two cell phones. They also detained K.J. and summoned Second District Det. Elliott Landreau. K.J. told Lentz that he and Hawthorne had come from Rodriguez's house on their way to the corner store, met a bearded man who first engaged Hawthorne in conversation, then shot him and fled.

{¶12} While Landreau was en route, Lentz continued to obtain the names of other potential witnesses. He noticed Banks walking up to the crime scene from an easterly direction because Banks seemed to be looking as if "he had some interest in what was going on." When Lentz questioned Banks, however, Banks indicated he had no knowledge of the people or the incident; Lentz soon released him.

{¶13} When Landreau arrived, after perusing the scene, he took K.J. to the station for a more extensive recorded interview. K.J. gave an account of the shooting that differed somewhat from the account he provided to Lentz, but provided the same description of the assailant, indicating that the shooter wore red pajama pants, a dark "hoodie," and a black "skully." K.J. seemed very concerned to obtain the blue cell phone found at the scene; he indicated it belonged to his girlfriend and he needed to return it. The phone, however, was sent for forensic analysis.

{¶14} Homicide Det. Michael Smith eventually was assigned to investigate the case. Rodriguez and Jackson, who were close friends with Hawthorne, provided Smith with similar accounts of the victim's activities on the night of the murder. As Rodriguez and Jackson described it, Hawthorne had arrived at Rodriguez's home with Eric Jackson at approximately 3:00 a.m., Hawthorne indicated that he had been receiving telephone calls from K.J., K.J. came to the house looking for Hawthorne and the two of them left together, and the gunshot occurred within minutes of their departure. Rodriguez thought it "weird" that K.J. wanted Hawthorne to go somewhere with him because the two did not associate with each other, while Jackson indicated he did not even know K.J.

{¶15} A few days after the murder, Khoury Scales brought his "best friend" Banks to the home of Scales's older sister, Thomasina Clark. Without preamble, Banks asked Clark if she "wanted to know how he did it." Clark did not understand what Banks meant, so Banks demonstrated by producing his gun and using her brother as a "dummy."

{¶16} With Scales laying on the floor under him, Banks "bent down over Khoury" and indicated that the person Scales stood in for somehow "wrestled" Banks's pistol from him but Banks got it back. Banks then demonstrated that he shot the other person in the stomach before he ran off.

{¶17} A few days later, Clark was driving with her brother and Banks in her car in the area where Hawthorne's murder occurred. When they passed the "memorial" set up for the victim, Banks stated, "I did that."

{¶18} Clark shared these revelations with her friend Toyja Davis. Davis, in turn, asked a police officer with whom she was acquainted what to do with the information. In this way, Det. Smith eventually focused on Banks as being involved in the murder. Smith soon discovered that Banks had been dating K.J.'s cousin for some time. In addition, DNA consistent with Banks's was found to be on the black cell phone left at the scene.

{¶19} Banks was indicted in this case on three counts, charged with two counts of aggravated murder and one count of aggravated robbery. Each count contained one- and three-year firearm specifications. Two defense attorneys were assigned to represent him.

{¶20} Banks's case proceeded to a jury trial. After considering the evidence, the jury found Banks not guilty of aggravated murder in count one, but guilty of the lesser included offense of murder with both firearm specifications. The jury acquitted Banks of the second and third counts. After the trial court imposed sentence, Banks filed the instant appeal.

{¶21} He challenges his conviction with seven assignments of error. His first and second present similar issues and are addressed together as follows.

**"I. The trial court erred in permitting the state to impeach its own witness with a prior inconsistent statement and in admitting that, as well as other hearsay statements[,] as substantive evidence in violation of the Ohio Rules of Evidence and in violation of Appellant's due process rights under the Fourteenth Amendment to the United States Constitution.**

**"II.    The trial court erred in permitting introduction of impermissible hearsay which denied the Appellant a fair trial in violation of the Ohio Rules of Evidence and in violation of the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment to the United States Constitution."**

{¶22} In these assignments of error, Banks asserts the trial court allowed the prosecutor to introduce improper evidence during the state's case-in-chief.   Banks claims the evidence violated Evid.R. 607, 801, 802, and his right to confront his accusers.

{¶23} This court remains mindful in reviewing Banks's claim that the admission or exclusion of relevant evidence rests within the trial court's sound discretion.  *State v. Robb*, 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000).   Thus, the record must reflect not only that error occurred, but also the existence of an abuse of discretion, in order for an appellate court to disturb the ruling of the trial court as to the admissibility of evidence.  *See State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998).

{¶24} Banks first asserts that the trial court permitted the prosecutor to impeach K.J., who was a state's witness, without first meeting the requirements of Evid.R. 607. A review of the record reflects Banks objected to the prosecutor's use of leading questions with K.J.   The trial court sustained Banks's objection, but K.J.'s manner of responding to the questions nevertheless caused the prosecutor to return to that method of direct examination.

{¶25} Evid.R. 607(A) provides in pertinent part:

The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party *calling* the witness by means of a prior *inconsistent* statement *only upon a showing of surprise and affirmative damage*. * * * .   (Emphasis added).

**{¶26}** Evid.R. 611(C), however, states in pertinent part that, "[w]hen a party calls a hostile witness, an adverse party, or *a witness identified with an adverse party*, interrogation may be by leading questions."   (Emphasis added.)   This rule provides the court with discretion to allow counsel to proceed in such a fashion.

**{¶27}** In addressing the distinction between the applicability of the two rules, this court noted as follows in *State v. Darkenwald*, 8th Dist. No. 83440, 2004-Ohio-2693, ¶15-16:

Traditionally, a "hostile witness" is one who surprises the calling party at trial by *turning against him while testifying*.   The traditional "hostile witness" is addressed under Evid.R. 607.   An "adverse witness" is one who identifies with the opposing party *because of a relationship* or a common interest in the outcome of the litigation.   Many times, the terms "hostile" and "adverse" are used interchangeably without drawing a clear distinction between the meaning of the terms.   The distinction in this case, however, is clear.
Cross-examination is a term of art used to define the examination of a witness by the opposing party. During cross-examination, the rules allow leading questions. Typically, leading questions are not allowed on direct examination *unless an exception applies*. See Evid.R. 611. Again, the terms "cross-examination" and "leading questions" are used interchangeably without a clear distinction being drawn between the meaning of the terms.   (Emphasis added.)

**{¶28}** *Darkenwald* explained that, although Evid.R. 607 applies to attacking the credibility of a "hostile" witness, that rule does not apply to an adverse witness, citing *State v. Burroughs*, 7th Dist. No. 93-CA-13, 1999 WL 1243136 (Dec. 16, 1999).   In *Burroughs*, the defendant presented the same argument as Banks does in his first assignment of error, but the court disagreed.   Because the record in *Burroughs* demonstrated the witness was uncooperative, evasive, and inaudible numerous times, and

because the witness's "identification with the Appellant alone would permit the prosecution to ask leading questions of her on direct examination pursuant to Evid.R. 611(C)," the witness was properly determined to be adverse. *Id.*

{¶29} Likewise, the record in this case shows K.J. was aligned with Banks but was reluctant to reveal his connection to him. As in *Burroughs*, although K.J. recalled making a statement to police, when presented with his audiotaped statement, K.J.'s recollection at trial remained different from what he heard on it. Because K.J.s responses to the prosecutor's questions were evasive, the prosecutor was unable to present anything material from them, and the trial court properly permitted the prosecutor to ask leading questions to develop K.J.'s testimony. *Id.*; *see also In re: Wise*, 7th Dist. No. 05 JE 40, 2007-Ohio-1393, ¶ 66. Evid.R. 611 applied, therefore, rather than Evid.R. 607. *Id.*

{¶30} Consequently, the trial court did not abuse its discretion. Banks's first assignment of error is overruled.

{¶31} Banks argues in his second assignment of error that the trial court improperly permitted Det. Landreau and Officer Lentz to provide hearsay testimony. Because the record reflects his defense attorneys did not object to the evidence, Banks argues the trial court committed plain error.

{¶32} Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error,

the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus. A review of the challenged testimony demonstrates the trial court's decision to admit it did not amount to error, let alone plain error.

{¶33} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Banks challenges testimony of two police officers concerning separate interviews of K.J. that occurred shortly after the incident.

{¶34} "[W]here statements are offered to explain an officer's conduct while investigating a crime, such statements are *not* hearsay." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist. 1987), citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980) (emphasis added). Simply put, the statements are not offered to prove the truth of the matter asserted. The court in *Blevins* went on to state:

> In order to admit out-of-court statements which explain an officer's conduct during the course of a criminal investigation, the conduct to be explained must be relevant, equivocal and contemporaneous with the statements. In addition, the statements must meet the standard of Evid.R. 403(A). *Id*. at paragraph one of the syllabus.

{¶35} The disputed testimony in this case fits within the confines of permissible evidence, because both Det. Landreau and Officer Lentz arrived at the scene shortly after the incident, each described relevant information he gained during his questioning of K.J., and explained the actions he then took. *State v. Monroe*, 8th Dist. No. 94768, 2011-Ohio-3045, ¶ 43. In describing the information gained, moreover, each was careful

to refrain from stating outright any of K.J.'s "declarations." At any event, K.J. subsequently testified, thereby permitting Banks his right of confrontation.

**{¶36}** Finally, because the probative value of the identified portions of the testimony Banks challenges was not substantially outweighed by either the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, as proscribed by Evid.R. 403(A), the trial court neither abused its discretion nor committed plain error. *Id*., at ¶ 44.

**{¶37}** Accordingly, Banks's second assignment of error also is overruled.

**{¶38}** Banks's third assignment of error states:

"III. The Appellant was denied a fair trial when the state committed prosecutorial misconduct in his [sic] closing argument[,] depriving the Appellant of due process in violation of the Fourteenth Amendment to the United States Constitution."

**{¶39}** Banks asserts that, during closing argument to the jury, the prosecutor inferred K.J. was a liar and mischaracterized several witness's testimony in an effort to present facts that were not introduced into evidence. However, the record does not support his assertion.

**{¶40}** The test for prosecutorial misconduct is whether the prosecutor's remarks *were* improper *and*, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484 (1999); *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 592, 112 L.Ed.2d 596. As to the second portion of the test, in order to determine whether a

prosecutor's remarks are prejudicial to the accused, the entire closing argument must be reviewed. *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). Both the prosecution and defense have wide latitude in closing arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott*.

**{¶41}** In this case, a review of the challenged remarks demonstrates that the prosecutor simply set forth what he thought the evidence showed. Even if the prosecutor's description of the witness's testimony was inaccurate, the trial court nevertheless instructed the jury to rely on its own recollection of the evidence. *State v. Durbin*, 2d Dist. No. 2003 CA 53, 2004-Ohio-2201, ¶ 15.

**{¶42}** The prosecutor also acted within permissible bounds when he reminded the jury that K.J.'s credibility had to be carefully weighed in light of the other evidence presented. *State v. Ferko*, 8 th Dist. No. 88182, 2007-Ohio-1588, ¶ 33.

**{¶43}** Because the prosecutor did not engage in misconduct during closing argument, Banks's third assignment of error also is overruled.

**{¶44}** Banks's fourth assignment of error states:

**"IV.  Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution and Article I, Section 10, Ohio Constitution."**

**{¶45}** In this assignment of error, Banks asserts his trial counsel rendered ineffective assistance. Specifically, Banks points to his trial counsel's failure to make objections to the testimony he challenges in his second assignment of error, and counsel's

misstatement of the current law in making a motion for acquittal at the close of the state's evidence.

{¶46} An appellate court reviews a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, trial counsel's performance will not be deemed ineffective unless a defendant can show that his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph one of the syllabus. To show prejudice, a defendant must demonstrate that, but for his lawyer's errors, a reasonable probability exists that the trial result would have been different. *Id.* at paragraph two of the syllabus.

{¶47} Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Sallie*, 81 Ohio St.3d 673, 674, 693 N.E.2d 267 (1998). This court will not second-guess what could be considered to be a matter of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985).

{¶48} This court previously has determined the trial court committed no error in admitting the testimony of which Banks complained in his second assignment of error. Moreover, decisions regarding when to raise objections fall within the realm of trial strategy. *State v. Davis*, 8th Dist. No. 91943, 2009-Ohio-3894. Therefore, trial counsel's performance was not deficient on this ground.

**{¶49}** As to trial counsel's attempt to resurrect *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974), counsel's effort can be taken two ways, neither of which supports Banks's argument.

**{¶50}** First, counsel's action can be assumed a matter of trial strategy. Because the trial judge only recently had been elected to his position, trial counsel perhaps hoped the judge could be persuaded to reinstate the analysis used in that case, which was extremely favorable to defendants. The record reflects the trial court gave consideration to counsel's effort.

**{¶51}** Second, because *Kulig* was extremely favorable to defendants, even if trial counsel were unaware that the case had been overruled by *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), Banks cannot demonstrate he was prejudiced by counsel's deficiency in citing *Kulig*. Indeed, trial counsel ultimately succeeded in securing Banks's acquittal on two of the charges, and in persuading the jury that Banks did not commit the crime with prior calculation and design.

**{¶52}** Because Banks cannot support his claim that trial counsel provided ineffective assistance, his fourth assignment of error also is overruled.

**{¶53}** Banks's fifth and sixth assignments of error state:

**"V.   The trial court erred by denying Appellant's motion for acquittal pursuant to Crim.R. 29 when the evidence was insufficient to sustain a conviction for Domestic Violence (sic).**

**"VI.   Appellant's conviction is against the manifest weight of the evidence."**

{¶54} In these assignments of error, Banks challenges both the sufficiency and the weight of the evidence presented at trial to support his conviction for murder. He contends the state's theory that he committed the crime was mere "speculation" that was unsupported by admissible, credible testimony.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶55} The record reflects that the case against Banks was based, in part, on circumstantial evidence. Nonetheless, circumstantial evidence has no less value than direct or testimonial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). The question is whether the state presented any evidence, that if believed, would support a conviction of murder pursuant to R.C. 2903.02(A), that is, that Banks "purposely cause[d] the death of" LaSalle Hawthorne.

{¶56} Rodriguez and Jackson testified that Hawthorne left Rodriguez's house in K.J.'s company but K.J. was not someone with whom Hawthorne normally associated. Rodriguez and Jackson heard a shot within minutes of Hawthorne's departure; K.J. then appeared at the house shouting that Hawthorne had been shot. The police found a cell phone with DNA consistent with Banks's on the ground near where the victim lay. K.J., whose cousin dated Banks, seemed anxious to retrieve that particular phone.

**{¶57}** The police were unable to corroborate K.J.'s version of the incident. However, on the night of the incident, Lentz noticed that Banks seemed to take an unusual interest in viewing the scene; Lentz therefore questioned Banks before releasing him.

**{¶58}** According to Clark's testimony, in reinacting his role in the incident, Banks stood over the victim, gun in hand, and shot him in the stomach at close range.   Banks seemed willing to take responsibility for the crime and displayed   no remorse.

**{¶59}** When viewed in a light most favorable to the prosecution, a reasonable juror could have found, based upon this evidence, that Banks purposefully killed Hawthorne. *State v. Rios*, 8th Dist. No. 95464, 2011-Ohio-3063. Consequently, the trial court did not err in denying Banks's motion for acquittal.

**{¶60}**   In order to warrant reversal of a jury's verdicts on a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   This court remains mindful in its review, however, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess.   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus (1967).

{¶61} Furthermore, the power to reverse a judgment of conviction as against the manifest weight of the evidence must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). This case does not present that rare situation.

{¶62} In this case, the state's witnesses presented testimony that provided a coherent version of the incident, provided a timeline that was consistent, and provided evidence that tied Banks to the murder. *State v. Wilson*, 8th Dist. No. 90267, 2008-Ohio-3354, ¶ 34. K.J.'s versions of his actions that night, especially prior to the incident, and his explanations at trial, on the other hand, were inconsistent; simply put, K.J. was not a credible reporter. Clark's descriptions of Banks's actions and demeanor after the murder, however, were both straightforward and chilling.

{¶63} The jury weighed credibility and it, as the fact finder, was free to believe all, none, or some of what the witnesses said during trial. In addition, the jury became well aware of the relationship between Banks and K.J. Based upon the record, this court cannot find that the jury either lost its way or created a manifest miscarriage of justice when it found Banks guilty of murder with firearm specifications. *Thompkins*, 78 Ohio St.3d 360, 678 N.E.2d 541 (1997).

{¶64} Accordingly, Banks's fifth and sixth assignments of error also are overruled.

{¶65} In his seventh assignment of error, Banks states:

**"VII.   The combined effect of the trial court's error and counsel's [sic] errors denied Appellant a fair trial under the Due Process clause of the Fourteenth Amendment to the United States Constitution."**

{¶66} Banks claims the cumulative effect of the errors he presents in his first through sixth assignments of error deprived him of a fair trial.   His claim lacks merit.

{¶67} Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error.   *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564; *State v. DeMarco*, 31 Ohio St.3d 191, 656 N.E.2d 623 (1987), paragraph two of the syllabus.   However, because this court found no instances of error in this case, the doctrine of cumulative error is inapplicable.

{¶68} Accordingly, Banks's seventh assignment of error is overruled.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
MARY J. BOYLE, J., CONCUR